## Clark's Adm'r v. Kentucky Utilities Co.

Dec. 2, 1941.

226

White & Clark and H. W. Linton for appellant.

T. M. Galphin, Jr., M. H. Taylor and W. H. Southall for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Reversing.

This action was brought by O. N. Clark, administra-

tor of the estate of his infant son, Alban L. Clark, against Kentucky Utilities Company, for damages growing out of alleged negligence in the construction, maintenance, and operation of its system of wires in such manner as to transmit lightning through the wires and upon the body of the decedent, thereby causing his death. At the conclusion of all the evidence defendant's motion for a peremptory instruction was sustained and judgment entered dismissing the petition, from which judgment the plaintiff has appealed. The theory of the defense was that the child's death resulted from a direct stroke of lightning which did not pass through the wires of the defendant, and, in any event, the company was not negligent in either the construction, maintenance, or operation of its system of wires.

The victim of the tragedy was 11 years of age, and, in company with his sister, 5 years of age, was visiting the home of his grandparents about one quarter of a mile north of Crofton, in Christian county, Kentucky. At the time of the accident the children were playing on the front porch, and immediately before the lightning struck, their grandmother went to the door to call them into the house. At that time the little boy was standing on a metal bench directly beneath an exposed double blade electric switch. She returned to the interior of the house and forthwith heard the report of the stroke of lightning, whereupon she rushed out and found the child's lifeless body on the ground near the edge of the porch. A postmortem examination disclosed two burns on the shoulder or neck of the victim which, as nearly as could be determined, were the same distance apart as were the blades of the electric switch under which the child was playing just before, and presumably at the time of, the accident. The only other scars on the body were burns on the soles of both feet. A splinter of wood from the facing which rests against the weatherboarding at the corner of the house was found lying on the ground, and had the appearance of having been recently torn from the house. The grandparents had been living in the house for about a year, having rented it from its owner and former occupant approximately 2 months after the latter had moved out of the premises. At the time the owner vacated the premises he requested the defendant company to disconnect the house from its service lines. The company discontinued the service but did not remove any of its equipment except the meter, and

there remained of the company's property the service wires, cables, and a meter box attached to the side of the house 6 or 8 inches to the rear of the front elevation. A cable extended from the meter box upward around the corner of the house where it was connected to some wires installed by the owner, and which ran to the switch aforesaid, thence to the interior of the house.

All of the witnesses fixed the time of the accident at approximately 4 o'clock on the afternoon of April 15, 1939. The Dunning family lived about a half mile north of the Clark home and shortly before 4 o'clock on the afternoon of the accident Mr. Dunning and his daughter saw a bolt of lightning strike a tree on their premises and observed balls of fire (lightning) running on defendant's wires down the highway. The tree which was struck was about 75 feet from the company's system of wires. W. M. Barnett was working in a field about 150 yards from the Clark residence when the lightning struck the child. He did not see it strike but his attention was called to the occurrence by the screams of the grandmother. He said that the stroke of lightning blew the fuses inside his building and that his house is serviced by the same transformer which services the Clark residence. An inspection by the defendant after the accident disclosed the fuses in the transformer were "blown." The transformer which serviced the Teague Filling Station and which is north of the one which serves the Clark home was totally destroyed by lightning having passed through it on that occasion.

We think the evidence relied on by the plaintiff to establish his theory that the lightning passed through the system of wires of the defendant was not only sufficient to be submitted to the jury but was of such character as to be persuasive of the fact. The lightning struck a tree on the premises of the Dunnings a half mile or so north of the Clark residence; it jumped from the tree and rolled along the service wires of the defendant company; proceeding southerly it passed through and destroyed the transformer which serviced the Teague service station and burned out the fuses in the station; its continued journey toward the Clark residence is demonstrated by proof that the fuses in the transformer servicing the Clark home were burned out; and that it went beyond the Clark home into a residence south thereof was conclusively proven by showing the fuses to be burned out in

the residence of Barnett. Teague is south of Dunning, Clark south of Teague, and Barnett south of Clark. Every other home and place of business along its wake was charged by lightning through the medium of defendant's wires, and that it should have skipped the Clark home in its destructive journey would be nothing short of miraculous. Having established the fact that lightning passed through the defendant's system of wires on that occasion, the facts revealed by the post-mortem examination as to the location and character of the burns on the shoulder or neck of the victim is convincing of the contention that the electric charge leaped from the switch to the body of the boy. This contention is further strengthened by the showing that immediately before the accident the child was standing on a metal bench directly under, and close to, the switch. No circumstance was proven which would indicate that the child was struck by a direct bolt of lightning which had not passed through the medium of defendant's system of wires. The sliver of wood found on the ground is pointed to as evidence of that fact but no one testified that this piece of wood had the appearance of having been struck by lightning. We do not mean to say that it was not possible for this child to have been killed by a direct stroke of lightning but it is our opinion that the evidence points strongly to the conclusion that the lethal charge came through the defendant's system of wiring. In other words, the evidence is not as consistent with the theory that the child was killed by a direct stroke as it is with the theory that the lightning was deflected to him from the wires of the defendant. That being true, the jury would not have to speculate as to what occurred; they would only be required to determine the evidentiary facts.

Such being our view, there remains to be considered the sufficiency of the evidence as to negligence in the construction, maintenance, and operation of the wires of defendant. The competency of experts used by both parties to this action is not questioned and their testimony is entitled to the full weight of expert opinion. Although there is evidence to the contrary, plaintiff introduced direct testimony to the effect that there was no ground to the system of wiring at any place from the company's transformer to the switch on the house, a distance estimated variously from 700 to 1,000 feet, nor was there any wire or cable leading from the transformer to the

ground, nor from the meter box to the ground; that if such grounds had been installed the lightning would likely have been discharged into the earth before reaching the house; and careful construction and operation required such installation. It is admitted by the defendant that such a ground wire was not in existence. It was likewise proved by experienced electricians that careful construction required a ground wire to lead from the meter box to the ground and the testimony is uncontradicted that such a wire was not in existence. The defendants attempted to prove that the duty of placing a wire from the meter box to the ground was upon the owner of the property by showing that property owners customarily made such installation; but we are of the opinion that since the wire would operate as a ground for an overcharge in defendant's system before it reached the private wires of the property owner, it was the duty of the company to make the installation or at least see that it was made. The law fixes duties for the breach of which damages may be allowed and the person upon whom a duty is imposed may not relieve himself of liability by proof that he and others similarly situated have never performed the duty imposed upon them. The public knows little about the peculiarities of electricity, and even the most enlightened scientists cannot always account for results obtained through its employment. Thus, those who provide channels which are alluring to the nature of electricity must exercise the utmost care and employ the most modern devices to prevent its destruction of property or life. The utmost care in such cases is the highest degree of care and skill which may be known to be useable in the circumstances. Kentucky Utilities Company v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. (2d) 283, 57 A. L. R. 1054. The introduction of proof on the part of the defendant that the entire system was installed under standard regulations and in accordance with the customs of the industry merely raises an issue of fact which may be submitted to the jury for determination. Conn v. Lexington Utilities Co., 233 Ky. 230, 25 S. W. (2d) 370. While the lightning was an act of God, if it was carried into the Clark residence on the wires of defendant, that was an act of the defendant. Evans v. Eastern Kentucky Telephone & Telegraph Co., 124 Ky. 620, 99 S. W. 936. If, in fact, an accident is due to the negligence of the defendant combined with an act of God, the injuries will be considered to be the proxi-

mate result of negligence and recovery may then be had. In other words, if the defendant's system of wires carried the lightning for a distance of half a mile and then, as a result of some omission of duty in respect to the construction, maintenance, or operation of its system, such as its failure to provide adequate grounding, the mass of lightning was carried on and discharged into the body of plaintiff's decedent, the defendant must respond in damages for such negligence. Dunning v. Kentucky Utilities Co., 270 Ky. 44, 109 S. W. 6. The question of whether the lightning was carried to the Clark residence and deflected from the wires of the defendant to the person of the deceased, and the further question of negligence in construction, maintenance, and operation of defendant's system of wires were questions of fact to be determined by the jury. Evans v. Eastern Kentucky Telephone & Telegraph Co., supra. We are therefore of the opinion the trial court erred in sustaining defendant's motion for a peremptory instruction.

In view of this conclusion we deem it unnecessary to discuss the contention of plaintiff that the failure on the part of the defendant to remove the wires from the premises at the time of the discontinuance of the service was negligence as a matter of law. However this question is discussed to some extent in the opinion in Evans v. Eastern Kentucky Telephone & Telegraph Co., supra.

For the reasons recited above the judgment is reversed for proceedings not inconsistent with this opinion.