**Patricia L. DAVIES, Administrator of Estate of David H. Davies, Deceased, and Patricia L. Davies, Individually, Plaintiffs,**

v.

**Nannie COLLINS, Executrix of Estate of Lloyd G. Collins, Deceased, and O. F. Shearer & Sons, Inc., Defendants.**

**Nannie COLLINS, Executrix of Lloyd G. Collins, and Individually, Plaintiff,**

v.

**O. F. SHEARER & SONS, INC., Defendant.**

**Nos. 1597, 1603.**

United States District Court, E. D. Kentucky, Covington Division.

Oct. 12, 1972.

Rouse & Mathis, Walton, Ky., for plaintiff Patricia L. Davies.

E. Andre Busald, Florence, Ky., for plaintiff Nannie Collins.

Richard S. Nelson, Covington, Ky., for defendant Nannie Collins.

James Nolan, Covington, Ky., for defendant Shearer in first action.

Philip J. Schneider, Cincinnati, Ohio, and James Nolan, Covington, Ky., for defendant Shearer in second action.

## MEMORANDUM

SWINFORD, District Judge.

The records of these companion cases are before the court on the defendants' motions for summary judgment. The plaintiffs are suing to recover for the alleged wrongful deaths of the decedents they represent. The deaths occurred on September 12, 1970, when a motorboat owned and presumably being operated by decedent Lloyd G. Collins, and in which decedent David H. Davies was a passenger, collided on the Ohio River with a barge owned by O. F. Shearer & Sons, Inc.

In civil action 1603, Nannie Collins, the executrix of Lloyd G. Collins' estate, is suing O. F. Shearer & Sons, Inc. to recover damages for the alleged wrongful death of her decedent. In civil action 1597, Patricia L. Davies, the administratrix of the estate of David H. Davies, who was a passenger in Collins' boat, is suing Nannie Collins and O. F. Shearer & Sons, Inc. to recover damages for the alleged wrongful death of her decedent. Defendant O. F. Shearer & Sons, Inc. has moved for summary judgment in both actions, and defendant Nannie Collins has moved for summary judgment in civil action 1597.

The facts of this case have been fully developed and the record contains sufficient evidence—depositions, admissions, interrogatories and memoranda of law—upon which the motions for summary judgment may be properly considered under Rule 56 of the Federal Rules of Civil Procedure. The court is of the opinion that there is no genuine issue as to any material fact and that the defend-

ants are entitled to judgment as a matter of law.

The material facts are not in dispute. On the evening of September 12, 1970, a clear moonlit night, the towboat O. F. Shearer, piloted by Lee Fletcher Burcham, was proceeding upstream on the Ohio River toward its landing point at Tanners Creek, a mooring approximately seven miles upstream from Aurora, Indiana. The O. F. Shearer was pushing its tow, which consisted of fifteen loaded coal barges coupled three abreast and five deep. The tow was 975 feet in length and 105 feet in width. The loaded barges drew nearly nine feet of water, riding only 1½ feet above the surface.

The O. F. Shearer and its tow were equipped with the customary navigational and running lights. The tow was illuminated by a red kerosene lantern, approximately 20 inches in height, located on the port timberhead of the front port barge, a green kerosene lantern, approximately 20 inches in height, located on the starboard timberhead of the front starboard barge, and an amber kerosene lantern, approximately 20 inches in height, located atop the coal pile on the front middle barge. See 33 United States Code 172. The O. F. Shearer, as required by law, had two white lights placed in vertical opposition on its stern jackstaff pole. See 33 United States Code 173. The two carbon search lights used for locating marker buoys were mounted on the pilot house, and ten yellow 60 watt lights ran down either side of the towboat. It may be noted at this point that it was customary for the O. F. Shearer's yellow side lights and search lights to be extinguished when under way so that the pilot's night vision would not be affected by glare. Finally in regard to the O. F. Shearer's navigational equipment, a radar unit of a functional range in excess of one mile was located in the pilot house.

The O. F. Shearer was manned by a crew of twelve, including deck hands, mates and two pilots. The crew as well as the pilots worked on alternating sched-

ules of six hour shifts. The principal duties of the deck hands and mates when under way were to clean the towboat, inspect the barges for leaks, inspect the barge's couplings, and to check the running lights on the front three barges. The barge inspections were made at one hour intervals. The pilot on duty was in sole command of the towboat. His principal duty was to keep the tow and towboat in the prescribed channel out of harm's way. On clear and moonlit nights the towboat was, as recommended by the Coast Guard "rules of the road" for inland waterways, guided by bare ocular navigation with the occasional aid of radar and search lights. Lee Fletcher Burcham was in command of the O. F. Shearer at the time of the collision. Burcham is a marine pilot of over ten years experience, and is licensed by the Coast Guard, although licensing is not required to operate river towboats.

The motorboat involved in the collision was the Bluebird, a fifteen foot fiberglass pleasure craft, powered by an 85 horsepower Johnson outboard engine. The evidence does not indicate whether the Bluebird was equipped with running lights or if it was, whether they were burning at the time of the collision. The Bluebird was owned and presumably being operated at the time of the accident by Lloyd G. Collins. David H. Davies was a passenger.

At approximately 10:45 p. m. on the night of the collision, Collins and Davies departed from the Aurora Perry Moorings, Aurora, Indiana. Their intended destination or route of travel is not known. The collision occurred at approximately 11:15 p. m. The Bluebird was not sighted prior to the collision by the pilot or any crew member of the O. F. Shearer. Nor was the collision heard or felt by the pilot or any crew member of the O. F. Shearer. Evidence of the collision scattered on the front port barge— fiberglass debris, a buoyant cushion and a water ski—was discovered by Otto Hedrick, Thomas Bird and Nathan Moore when they were checking the barge's running lights and making mooring preparations for docking at Tanners Creek. After discovery of the wreckage the O. F. Shearer proceeded to Tanners Creek where its tow was moored and the accident was reported. Passing vessels were notified of the collision and a search was made for survivors of the Bluebird, however the bodies of Collins and Davies were not discovered until September 16, 1970, about one-half mile south of Bellevue, Kentucky. The coroner's report indicates that death in both cases was due to drowning.

A light check made prior to the discovery of the evidence of the collision and a check made subsequent thereto revealed that the barge's lights were operational at the time of the collision. Further evidence indicates that the O. F. Shearer was proceeding within the channel at the time of the collision. Despite the fact that the weather conditions were clear and visibility was good, Pilot Burcham has testified that the radar, which is normally only used in conditions of fog or low visibility, was on at the time of the collision. Burcham stated, however, that he was not observing the radar screen before the accident occurred.

The court is, in light of the foregoing undisputed facts, satisfied that defendant O. F. Shearer & Sons, Inc.'s motions for summary judgment must be sustained. That tort cases are not susceptible to summary adjudication is a frequent exhortation of the courts, but where there are no questions of fact, there are no jury issues, and the case, be it tort or otherwise, should be decided on motion. The Court of Appeals for this circuit has stated that in a negligence case where the evidence most favorable to the party opposing the motion would require a directed verdict in favor of the moving party, summary judgment is proper. Aetna Insurance Co. v. Loveland Gas & Electric Co., 369 F.2d 648 (6 Cir. 1966). In this case no material facts are in dispute, and in the opinion of the court, the undisputed facts do not make out a case of actionable negligence. The facts indicate that the O. F. Shearer and its tow were at the

time of the accident operating within the standard of care and prudence required by the law and inland waterway custom. The towboat was being commanded by a licensed pilot of long standing experience. The towboat and the tow were navigating within the proper channel at the time of the collision. The tow was properly illuminated and the pilot was keeping a vigilant lookout.

There are three essential elements in a tort case which the plaintiff must prove. He must demonstrate that he was owed a duty of care; that that duty was breached; and that the breach resulted in harm. Duty or standard of care is a question of law. It is for the court to determine what standard of care a reasonable man would have exercised under similar circumstances. Here the plaintiffs argue that the collision may have been avoided had additional lights been lit on the O. F. Shearer and its tow, or had the radar been more closely scrutinized by the pilot. These allegations do not raise a permissible inference of negligence unless it is found that the pilot and towboat owner had, as a matter of law, a duty to burn additional lights and a duty under the prevailing weather conditions, to closely monitor the radar. The court is satisfied that there was no duty to operate additional lights, nor any duty, under the weather conditions of September 12, 1970, to continually observe the radar screen. In a negligence case, speculations as to what could have been done, where there was no duty to have done those things, are entirely hypothetical and without import. It is not negligent to fail to take precautions which no reasonable man would feel to be necessary under the circumstances. All of this is to simply say that the facts of this suit do not make out a case of negligence.

The fact that the pilot was not, at the time of the accident, using his search lights is not significant. The testimony reveals that search lights are primarily used to locate marker buoys. Oden C. Austin, the second pilot on the O. F.

Shearer testified in regard to the lights as follows:

"Q. How many lights are on the boat itself?

A. Red Green and two amber. There's four lights.

Q. Four lights?

A. Yes sir, two on the stern and two on the pilot house.

Q. There are no lights on the side of the boat?

A. There is some but we don't keep them on. The law required all unnecessary lights to be turned out.

Q. So that you can see better?

A. That's correct.

Q. So you keep that carbon light off as much as possible too, don't you?

A. Well not on that particular night. It was a Saturday if I remember correctly, and we usually do keep that on quite a bit when there are a lot of boats out on the river. We turn it on to let them know there is a tow."

At the time of the accident there would have been no need to have had the search lights on. Although the lights may have been used as a warning device earlier in the evening when river traffic was heavy, there was no reason to expect much activity on the river at 11:00 p.m. Moreover the lights were not needed for navigational purposes at the time of the collision. Similarly there was no need to have had additional running lights on the tow or towboat. All of the running lights which law or custom required were being operated, and additional lights would not have been advisable as they would have had a deleterious effect upon the pilot's vision.

The fact that the pilot was not at the time of the accident attentively monitoring his radar is also not significant. Where weather conditions are clear and visibility is good, radar is generally not as reliable as a visual lookout. Under the weather conditions on September 12,

1970, it was more prudent for the pilot to maintain a visual lookout than to depend solely upon his radar. The deposition of Lee Fletcher Burcham, the pilot in command at the time of the collision, includes the following colloquy:

"Q. Which is the most effective on a night like the night when this debris was discovered, your straight ahead vision or the use of radar?

A. I'd say myself, my vision.

Q. Would you explain yourself please?

A. Well the radar is sitting off to the side, and if you're sitting there watching that you can't observe other things around you.

Q. Why do you say your straight ahead vision is better than radar, is there any reason for that other than the fact that it's on the side?

A. Like on a clear night when you can see I just depend on my eyes more than the radar.

Q. Is the actual vision of a small craft on a night like this better than the blimp that shows up on the radar screen?

A. Yes, you could watch his lights at night and see the direction he is traveling.

Q. Did you at any time before you were releaved of your watch see any craft immediately in front of you?

A. No."

In short, the pilot had no duty to use his search lights, nor had he any duty to rely solely upon his radar, and his failure to do those things does not raise a question of negligence.

It is a rule of admiralty that the failure of a lookout to see or hear what he should have seen or heard is negligence per se. There is, however, no indication that the pilot of the O. F. Shearer should have or even could have seen or heard the Bluebird. In Tidewater Associated Oil Co. v. United States, 60 F.Supp. 376 (D.C.Cal.1945), the court found that a lookout of ten years experience was competent as a matter of law. This court finds that Burcham, a licensed river towboat pilot of more than ten years experience was competent as a matter of law, and did not fail to see that which he should have seen.

The court is convinced that O. F. Shearer & Sons' motion for summary judgment must be sustained. As was observed by Chief Judge Weick in his dissenting opinion in Arrasmith v. Pennsylvania Railroad Co., 410 F.2d 1311 (6 Cir. 1969):

" 'It is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right.' "

The court is also satisfied that the motion of Nannie Collins for summary judgment as to the claims of Patricia Davies must be sustained. No facts exist as to the operation of the Bluebird, therefore none could be adduced. Culpable negligence cannot be presumed merely because an accident has occurred. At best Patricia Davies could make out a case of "inscrutable fault" upon which no liability could be placed. See Atkins v. Lorentzen, 328 F.2d 66 (5 Cir., 1964). The finding that O. F. Shearer was not guilty of negligence does not imply that Collins was, where there is no evidence that Collins failed to exercise ordinary care.

For the foregoing reasons, the court will this day sustain the motions of the defendants and dismiss these actions.