**M & T CHEMICALS, INC., Appellant,**

**v.**

**Donald Lee WESTRICK, by Joyce Westrick, his mother and next friend, Appellee.**

**Johnny N. DAVIS, Appellant,**

**v.**

**Donald Lee WESTRICK, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 22, 1974.

As Modified on Denial of Rehearing June 20, 1975.

William Mellor, Mellor & Shaw, Louisville, for appellant M & T Chemicals.

Andrew J. Russell and William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, John G. Wright, Warsaw, for appellant Johnny N. Davis.

Robin Griffin, Miller, Griffin & Marks, Lexington, W. A. Wickliffe, Harrodsburg, for appellee.

JONES, Justice.

On December 6, 1969, Donald Lee Westrick, age 5, had a foot severed by the explosion of a metal drum. His mother, Joyce Westrick, filed an action against M & T Chemicals, Inc.; Johnny N. Davis,

d/b/a Tip-Top Sanitation; and Charles Ryan, owner and operator of a mobile home park. The jury returned a verdict for $76,111.00 against M & T; and $38,055.50 each against Davis and Ryan. In addition, M & T was awarded judgment for $76,111.00 against Davis by way of indemnity. M & T and Davis appeal from the judgment on the verdict entered against them. Davis appeals also from the judgment awarding indemnity to M & T on the basis of an alleged indemnity agreement. These appeals have been consolidated and considered together. Ryan satisfied the judgment against him and is not a party to this appeal.

M & T and Davis both insist that they were entitled to directed verdicts. To determine if this is so, it is necessary to consider certain pertinent facts.

M & T manufactures industrial chemicals and coatings. The products are placed in steel and fiber drums of various sizes and stored in several places throughout M & T's plant. For several years prior to the accident, Davis contracted annually with M & T for the removal and disposition of trash and waste materials from M & T's plant. M & T's used drums generally were sold for reclaiming but occasionally they were thrown in the trash to be hauled by Davis.

After getting trash at M & T, Davis placed it on his private dump. Several times a week he crushed and bulldozed the trash into the ground.

On the date of the accident, Wilbur Horner, Bobby Gene McDole and Loren Lee Anderson trespassed on Davis' lot and took three sealed drums. Horner, a part-time employee of Ryan, testified that he intended to use the drums as trash receptacles at Ryan's trailer park, where young Westrick lived with his mother. Horner, McDole and Anderson took the drums to Ryan's trailer park two or three miles from Davis' lot. The drums originally contained a dirty solvent which was not inherently dangerous, but the application of heat or fire to a sealed drum containing the residue of solvent made it flammable and dangerous. The words "Dirty Solvent" were stenciled on the drum that exploded.

Horner, McDole and Anderson decided to use an aceylene torch to remove the tops from the drums. Although it was obvious to them that the drums had contained some kind of industrial liquid, they made no effort to flush the drums or otherwise to guard against the possibility of there being explosive or inflammable liquid or gas in the drums.

McDole and Anderson testified that they knew children were playing in the area. They had seen the children in the back of the trailer park while they were removing the tops from the drums. Horner, using the torch, cut the top from one drum. Nothing happened. The top of the second drum was partly cut off, again with no problem. Anderson then undertook to cut the top from the third drum, and it exploded. The top of that drum hit Donald Westrick, who was standing a few feet away.

A fundamental principle of negligence is that there is no liability without fault. Every person owes a duty to every other person to exercise ordinary care in his activities to prevent any foreseeable injury from occurring to such other person.

"Actionable negligence consists of a duty, a violation thereof, and consequent injury. The absence of any one of the three elements is fatal to the claim." Illinois Central Railroad v. Vincent, Ky., 412 S.W.2d 874 (1967). Applying these standards militates against a finding of liability against either M & T or Davis. We are of the opinion that nothing done or omitted to be done by M & T or Davis reasonably could have been foreseen as a cause of injury to any third party, and therefore they are not chargeable with

any violation of duty. The case presents a situation where third parties who were knowledgeable of the danger and risk caused the harm by their intentional conduct. In our view the law shifts the responsibility for the harm suffered by Donald Lee Westrick to the intentional actors in the factual pattern presented by this case.

The trial court should have sustained the motions of M & T and Davis for directed verdicts. When he failed to do so he should have sustained each of their motions for judgment n. o. v.

The judgments against M & T and Davis are reversed with directions that the judgments against M & T and Davis be set aside and judgments n. o. v. entered dismissing the claims against them.

JONES, PALMORE, STEPHENSON and STERNBERG, JJ., concur.

REED, C. J., filed an opinion dissenting in part in which CLAYTON, J., joined. LUKOWSKY, J., dissents in separate opinion.

REED, Chief Justice (dissenting in part).

I dissent from that part of the opinion which holds that Johnny N. Davis, d/b/a Tip-Top sanitation, was entitled to a verdict and a judgment n. o. v. In my opinion the question of the liability of Davis was a jury issue.

Section 449 of the Restatement of the Law of Torts 2d, page 482, declares:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

The majority opinion recites that actionable negligence consists of a duty, a violation thereof, and consequent injury. This simplistic definition is sound enough so far as it goes, but in the present case the concept of negligence, in my view, is better defined as conduct involving an unreasonable risk of harm; the test for assessing whether a risk is unreasonable involves determination of the amount of caution demanded of the actor, and this is a resultant of three elements: the likelihood that the conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which must be sacrificed to avoid the risk. See Harper and James, The Law of Torts, Vol. 2, 929.

Although liability for negligence is not based on engaging in dangerous but lawful activities, their dangerous character may call for greater precautions, while on the other hand their value to society may call for less onerous precautions, ibid. 934.

So far as M & T Chemicals, Inc., is concerned, in order to subject it to liability it would be necessary to find that, although it observed precautions for the disposition of the drums containing the potentially explosive and inflammable material on most occasions and warned those with whom it came in contact concerning the disposition of the drums to the extent of requiring indemnity from them, it would still be subject to liability by reason of the negligence of the dump keeper in failing to protect the drums which came into his possession contrary to the instructions of M & T where a third party off the premises of the dump keeper was injured by the after-occurring negligent conduct of the scavengers from the dump. In my view, this course of events "broke the chain" so far as persons within the foreseeable area of hazard were concerned with respect to M & T's conduct.

The situation of Davis, however, is quite another matter. Davis had been advised

and was fully cognizant that he was possessing and storing a dangerous substance. A jury could believe from the evidence in this case that he knew people were pilfering items from his premises and that these items contained dangerous substances that would injure others and would injure them seriously under foreseeable conditions. The evidence was in conflict concerning the knowledge of the scavengers as to the dangerous potential of the substance with which they dealt and the conduct in which they engaged.

When the element of foreseeability by Davis is considered, reasonable men could conclude that the likelihood of harm was sufficiently foreseeable to warrant the imposition of liability although the average person would not have foreseen the particular method by which the injury occurred.

The majority opinion stands for two propositions that to me are seriously questionable. The first is that the scope of duty must be measured after the event by the particular method that occurred to cause the harm. The second is that regardless of the standard of conduct imposed by the possession of things more than ordinarily dangerous, the last responsible actor only should be held liable and his conduct insulate the immediately prior negligent actor from liability. This is not to say that under the circumstances a jury in assessing the element of foreseeability could not have exonerated Davis. I do believe, however, that the evaluation should have been made by the jury and not by means of judicial fiat.

Therefore, I respectfully dissent to so much of the opinion as exonerates Davis as a matter of law.

CLAYTON, J., joins in this dissent.

LUKOWSKY, Justice (dissenting).

I join with the Chief Justice in the views which he expressed as to the liability of Johnny N. Davis, d/b/a Tip-Top Sanitation.

The web of liability woven by the Chief Justice from the threads of "unreasonable risk of harm" and "foreseeability of injury" is both large enough and strong enough to enmesh and hold M & T Chemicals, Inc.

A reasonable fact finder has a right to believe that an ordinarily prudent manufacturer who must dispose of "potentially explosive and inflammable material" would exercise a degree of care for the protection of the public in excess of the general warning and requirement of an indemnity agreement observed here.

The standard of care escalates in at least direct proportion to the risk of harm. The value of M & T's contribution to society would not be significantly impaired by a requirement that these potential bombs be accurately segegrated by its employees or even kept under lock and key in an ammunition dump.

The trial court properly submitted the whole case to the jury. It returned its verdict. I would affirm the judgment entered on that verdict in its entirety.