**KENTUCKY AGRICULTURAL ENERGY CORPORATION, Plaintiff,**

v.

**BOWLING GREEN MUNICIPAL UTILITIES BOARD and Tennessee Valley Authority, Defendants.**

Civ. A. No. C–88–0003–BG(M).

United States District Court,
W.D. Kentucky,
at Bowling Green.

May 23, 1989.

A. Richard Bailey, Elaine M. Rinaldi, Cozen and O'Connor, Philadelphia, Pa., Charles E. English, Jr., English, Lucas, Priest & Owsley, Bowling Green, Ky., for plaintiff.

Bradley R. Hume, Woodward, Hobson & Fulton, Louisville, Ky., Timothy L. Mauldin, Bell, Orr, Ayers and Moore, Bowling Green, Ky., Carroll M. Redford, Jr., Redford, Redford & Gardner, Glasgow, Ky., for Bowling Green Mun. Utilities Bd.

Edward S. Christenberry, Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, Edwin W. Small, Asst. Gen. Counsel, Peter K. Shea, Sr. Litigation Atty., Melvin L. Harper, Tennessee Valley Authority, Knoxville, Tenn., for Tennessee Valley Authority.

## MEMORANDUM OPINION

MEREDITH, District Judge.

This case is before the Court on the motion of the defendant for summary judgment against the plaintiff, Kentucky Agricultural Energy Corporation, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded in opposition, to which the defendant, Tennessee Valley Authority, submitted a reply. Plaintiff subsequently filed a surreply brief to which defendant responded.

Kentucky Agricultural Energy Corporation (hereinafter referred to as KAEC) commenced the above-styled action against Bowling Green Municipal Utilities (hereinafter referred to as BGMU) for alleged negligence in causing a power outage which occurred on December 25, 1983, in the City of Bowling Green, Kentucky. Suit was originally brought in Warren Circuit Court on January 7, 1986. The Tennessee Valley Authority (hereinafter referred to as TVA) was added as a defendant on December 7, 1987, and the defendants thereafter removed the case to this Court pursuant to 28 U.S.C. § 1441 (1982).

KAEC has alleged that the power outage was caused by BGMU's negligence as well as the negligence of TVA. As a result of the power outage, which lasted 88 minutes, KAEC claims it suffered extensive property damage. More specifically, it claims the outage caused certain of its equipment, machinery, and piping located within its alcohol plant to freeze, with resulting damages in the amount of Eight Hundred Twenty-Four Thousand One Hundred Thirty-one Dollars and Forty Cents ($824,131.40) for the necessary repairs and replacement.

It is undisputed that no contract exists between KAEC and either TVA or BGMU. Rather TVA has contracted with Warren Rural Electric Cooperative Corporation (hereinafter referred to as WRECC) who thereafter contracted with KAEC to supply it electricity from its distribution center. WRECC is one of the 160 municipal and cooperative distributors of TVA power which generally supplies the power needs of the ultimate consumers—industrial, commercial and residential—throughout the 7-state area in which TVA power is distributed pursuant to the TVA Act, 16 U.S.C. §§ 831—831dd (1982 & Supp. IV 1986).

In its motion for summary judgment, TVA contends that it maintains no legal duty to KAEC for which tort liability could be imposed in this case and that the imposition of tort liability against TVA is an "unpermitted attack" on its rate structure.

The standard for this Court to follow in determining this summary judgment motion is whether there are any genuine disputed issues of material fact and, if not, whether the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> "Only disputes over facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Plaintiff brings this suit under a tort theory alleging that TVA negligently maintained its electric generating equipment. The defendant TVA is entitled to summary judgment as a matter of law.

Under Kentucky law, in order for an action to lie in negligence, the movant must prove that a duty is owed by the defendant to refrain from doing some act, that this duty has been breached, and that said breach causes injury to the plaintiff. *M & T Chems., Inc. v. Westrick*, 525 S.W.2d 740 (Ky.1975). To prevail on the basis of the latter two requirements enunciated above, the movant must first show that a duty existed. In the instant case, we cannot say that a duty existed on behalf of TVA as an electric wholesaler for alleged property damage to a once-removed purchaser.

As this is a case of first impression in Kentucky, this Court finds almost an identical case decided by the Eastern District of Tennessee in *AFG Industries v. Holston Elec. Coop.*, 556 F.Supp. 33 (1982) to be most persuasive. In that case, as in the case at hand, the plaintiff, an industrial customer of a distributor of TVA power, alleged property damage resulting from two 1–hour interruptions in electric service to the plaintiff's plant. Pursuant to the Court's decision in *AFG, supra*, no research has disclosed, nor does any statute or regulation impose any legal duty to supply uninterrupted electrical service to its customers (residential, commercial or industrial).

KAEC has presented an argument in its response to TVA's motion which, although true, does not directly address the issue presented. The thrust of this argument resides within the language of the TVA Enabling Act which provides, in part, as follows:

*Section 831c Corporate Powers generally; eminent domain; construction of dams, transmission lines, etc.*

Except as otherwise specifically provided in this Act [16 U.S.C.S. §§ 831, et seq.], the Corporation—

(b) May sue or be sued in its corporate name.

16 U.S.C. § 831c(b) (1984). However, the issue at hand is not whether TVA can or cannot be sued, but rather whether or not it owes a duty to KAEC.

In proffering case law supporting the contention that TVA owes a duty to KAEC, plaintiff has referred to a case decided in this District where liability was imposed upon TVA as a private entity for its commercial activities involved in the use and sale of electric power where plaintiff's property was damaged as a result of blasting activities undertaken by TVA in the construction of a new electric power substation. *Brewer v. Sheco Construction Co.*, 327 F.Supp. 1017 (W.D.Ky.1971). While it cannot be disputed that TVA was held liable in *Brewer, supra*, the liability there imposed is based upon the theory of absolute liability, distinguishable from the alleged negligence in the instant case. Under Kentucky law an individual is absolutely liable for the harm he does to another's property resulting from blasting or detonating activities. *Adams & Sullivan v. Sengel*, 177 KY. 535, 197 S.W. 974 (1917) and *Lynn Mining Company v. Kelly*, 394 S.W.2d 755 (Ky.1965). In the case at hand we are not dealing with a dangerous activity for which one could incur absolute liability. A negligence claim does not automatically impose such liability.

As was stated by the *AFG* court, prior to that time no decision of any case, statute, or regulation had been revealed to impose a duty under the circumstances such as we have here. Neither has the plaintiff in the instant case disclosed, nor has our own research uncovered any such decision. This Court is of the opinion that the *AFG* court has provided a sound, logical and persuasive analysis of the pending issue. KAEC was disturbed that *AFG* was relied upon by only one other Federal District Court, in *Muscle Shoals Minerals Co. v. Tennessee Valley Authority*, No. 83–2107 MB (W.D. Tenn., Dec. 29, 1983). It further felt that both *AFG* and *Muscle Shoals, both supra*, rendered their opinions without legal analysis and without considera-

tion of the Federal Tort Claims Act and the TVA Enabling Act which specifically provides that TVA may be sued for its negligence. To dispel this latter contention of KAEC, we reiterate that the issue is not whether TVA is immune from suit, but rather the major issue is, as has previously been pointed out, whether TVA owes a duty to an industrial consumer who purchased its electricity from a distributor of TVA.

With regard to KAEC's contention that the *AFG* and *Muscle Shoals* courts rendered their opinions without legal analysis, this Court respectfully disagrees. To justify reliance on the legal reasoning of these cases one must only look at the language the courts used in *AFG, supra,* and *Muscle Shoals, supra.*

In granting TVA's motion for summary judgment, the court stated in *Muscle Shoals, supra:*

"In regard to the plaintiff's assertion that TVA was negligent in failing to maintain the necessary electrical supply, this Court concludes that such a theory of recovery must also fail. It is well settled that the essence of the tort of negligence is the existence of some legal duty owed by the defendant to the plaintiff. Absent the existence of some legal duty owed by the defendant for the plaintiff, there can be no liability for negligence. This Court is unable to find any authority (nor has any been supplied by the plaintiff), which imposes a legal duty upon TVA to supply uninterrupted electrical service to the plaintiff."

*AFG, supra,* likewise held for TVA in deciding that TVA had no legal duty "to supply uninterrupted electrical service to its customers (whether residential or commercial), or to exercise any degree of care to avoid brief interruptions in such service such as those involved herein." The court, as its basis, went on to explain:

"The imposition of such a duty on TVA by this Court would not be proper since, in marketing electricity, TVA is disposing of property of the United States which is a function vested by the Constitution in the Congress, not the judi-

ciary." *Mobil Oil Corporation v. Tennessee Valley Authority,* D.C.Ala. (1974) 387 F.Supp. 498, 507[6], n. 22.

This Court likewise agrees that the situation herein mandates judicial restraint. Furthermore, even if this Court were inclined to impose the duty advocated by the plaintiff on TVA, it would be remiss in doing so on the basis that a federal court is one of limited jurisdiction and as such is not vested with open-ended law-making powers. *Northwest Airlines v. Transport Workers,* (1981), 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750, 765 [10].

Yet another reason this Court refuses to extend liability to TVA is on the basis of the long-established rate scheduling procedures utilized by TVA. TVA has for many years been supplying power under long-term contracts to 160 municipal and cooperative distributors for resale, and directly to 10 federal agencies and 45 large industrial customers, covering an area of portions of seven states and containing 80,000 square miles. This power hub includes hydroelectric, fossil, and nuclear-fueled generating units, and more than 600 substations, all interconnected by over 17,000 miles of transmission lines. TVA's sale of electricity to industrial customers, like KAEC, is "... a secondary purpose, to be utilized principally to secure a sufficiently high load factor and revenue returns which will permit domestic and rural use at the lowest possible rates and in such manner as to encourage increased domestic and rural use of electricity...." 16 U.S.C. § 831j.

To insure the lowest rates possible to its power consumers (directly served industrial customers and municipal and cooperative distributors), TVA does not include any increment to pay for damages which may result from interruptions in electric power service. TVA has always included in its contracts with industrial customers provisions for limitations in the event of such interruption. Although this requires the risk to be borne by the customer involved, it also guarantees a rate structure which provides the cheapest means of electric power possible under the circumstances. It also serves to carry out the provisions of

Section 12 of the TVA Act that "all contracts entered into between the Corporation and any municipality or other political subdivision or cooperative organization shall provide that the electric power shall be sold and distributed to the ultimate consumer without discrimination as between consumers of the same class." Accordingly, a customer plant located some distance from a generating plant will have the same rates as one located nearby such a facility.

TVA does provide a higher degree of service for more protection and a more reliable supply of power than the basic service at a higher rate. It is clear that KAEC could have obtained a higher degree of service, providing greater reliability, from TVA through its distributor, WRECC. It makes no difference that KAEC had not contracted directly with TVA in consideration of KAEC's failure to obtain such additional level of service. In KAEC's contract with WRECC it is expressly stated in the attached schedule of Rules and Regulations (which is controlling under the Industrial Power Contract entered into April 30, 1981 between WRECC and KAEC, at p. 4, § 3. *Availability of Power*) that, "The member [KAEC] shall pay the cost of any special installation necessary to meet non-standard requirements for service." (WRECC Schedule of Rules and Regulations, Page 3 of 3, *Non–Standard Service*, April 1974). It is thus clear from this provision that KAEC had the opportunity to secure an additional level of service for greater reliability in the event of an outage for an additional cost to be borne by it. "Non–Standard Service," as used in the Schedule of Rules and Regulations, certainly includes any service providing greater reliability to the customer.

In a factually similar case, *Monsanto Company v. Tennessee Valley Authority*, N.D.Ala., CA–78–PT–5024–NE (1981), where it was likewise held that TVA did not have any responsibility or liability for the negligent interruption of electrical power, the Court stated its reason for requiring the power customer to bear the burden of obtaining additional services. The Court stated:

"9. Monsanto does not expect or want TVA to know the proprietary methods of operations or details of the manufacturing processes used by Monsanto at its Decatur plant or any of its other plants. Only Monsanto knows its plant, processes, equipment and operations, and only Monsanto knows what equipment and operating procedures are necessary to safeguard and protect itself against such an interruption." *Monsanto, supra,* at p. 4.

A distinction between *Monsanto, supra,* and the instant case is that TVA was directly providing power to Monsanto at its Decatur plant. In making the determination that KAEC had the opportunity to obtain a higher degree of service pursuant to its contract with WRECC, this Court is of the opinion that it makes no difference that TVA was not the entity with whom KAEC had contracted. According to TVA's contract with its distributor, WRECC, it specifies the applicable resale rates to be charged to customers contracting with the distributor. These rates are set by TVA's Schedules of Rates and Charges. (Power Contract entered into between TVA and WRECC on May 7, 1982, p. 5, § 5 Resale Rate, Subsection (b)). WRECC's contract with KAEC makes reference to this fact. (Industrial Power Contract, p. 6, § 5. *Rates and Charges*).

KAEC never sought to obtain such an additional level of service. Had KAEC bargained for said higher degree of service this Court may have felt differently in its determination of not imposing liability on TVA. Then TVA would have had a duty to perform to a higher degree. However, as such is not the case here, in keeping with its rate structure policy, TVA had no such duty in this case.

This Court further declines to impose liability on TVA for public policy reasons on the premise that to so expose TVA to such certain open-ended liability would require TVA to rework its entire rate schedule and would undoubtedly lead to sharp rate increases to all its consumers. The crushing burden of potential liability would be so great that TVA would have no choice

but to pass the cost of the risk on to the customer. To do otherwise, considering the possibility of a temporary outage of an entire municipality, the ramifications could be economically disastrous to this power-generating system which supplies electricity to the entire Tennessee Valley Region. Most consumers are not greatly affected by a temporary outage. With industrial consumers, however, such as KAEC, where 88 minutes may cause extensive damage, to those this Court suggests they obtain the additional level of service necessary to insure protection. This additional cost it may have to pay should not be incurred by the millions of other consumers who would not be hurt by such a temporary mishap.

W. Prosser and W. Keeton, *The Law of Torts*, § 93, at 671 (5th Ed.1984), to which defendants have referred the Court, aptly summarizes the raison d'etre of this and other courts in refusing to extend liability for negligence to suppliers of utility services:

> Similar non-liability rules have been applied to physical injuries and physical harm to tangible things resulting from interruptions of gas or electricity. But the imposition of tort liability on those who must render continuous service of this kind to all who apply for it under all kinds of circumstances could be ruinous and the expense of litigating and settling claims over the issue of whether or not there was negligence could be a greater burden to the rate payer than can be socially justified.

That rates "as low as feasible" for electricity be afforded the customers is paramount as stated in the TVA Act; 16 U.S.C. §§ 831j and 831n–4(f). To hold TVA liable in the worst case scenario for a temporary outage to potentially millions of customers would have a devastating economic impact on TVA that is incomprehensible to this Court.

An appropriate Order will be entered as of this same date.

## JUDGMENT

For the reasons set forth in the accompanying Memorandum Opinion entered this same date,

IT IS HEREBY ORDERED that the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is hereby granted.

This is a final and appealable Order.