**G & K DAIRY, et al., Plaintiffs,**

v.

**PRINCETON ELECTRIC PLANT BOARD, Defendant.**

**Civ. A. No. C–89–0255–P(S).**

United States District Court,
W.D. Kentucky,
Paducah.

Sept. 25, 1991.

Sandra D. Freeburger, Deitz, Fridy & Freeburger, Sebree, Ky., Alan C. Stout, Marion, Ky., for plaintiffs.

Darryl W. Durham, Alagia, Day, Marshall, Mintmrie & Chauvin, Louisville, Ky., for TPD.

McMurry & Livingston, Paducah, Ky., for Princeton Elec. Plant Bd.

### MEMORANDUM

SILER, Circuit. Judge, Sitting by Designation.

### INTRODUCTION

The defendant moved the Court for summary judgment in this personal property damage action. For the following reasons, the Court will grant the motion in part and deny it in part.

### I.  SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted only "if the pleadings, depositions, answers to

interrogatories, and admissions ..., together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). The moving party has the burden of showing that no genuine issue of material fact exists. *Weinberger v. Hynson*, 412 U.S. 609, 622, 93 S.Ct. 2469, 2479, 37 L.Ed.2d 207 (1973). In addition, all inferences "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 527 (6th Cir.1962).

## II. FACTS.

Viewed in the plaintiffs' favor, the facts are as follows:

The defendant is a non-profit municipal corporation. The defendant does not generate electricity. Rather, it receives electricity from the Tennessee Valley Authority (the "TVA") and distributes it to its customers, including the plaintiffs.

In the late 1970's and the early 1980's, the power industry realized that dairy cattle were sensitive to even low levels of electric current. One volt can adversely affect dairy cattle, and when dairy cattle are exposed to sufficient current, behavioral problems may occur, the outbreak of various diseases, including mastitis, may increase, and milk production may decrease.

The stray voltage which may affect dairy cattle is the voltage that can be measured between two points with which a cow may come into contact. For instance, sometimes, it can be measured between a water bowl in and the floor of a barn.

In April, 1987, an equipment serviceman advised the plaintiff, Francis Kilgore ("Kilgore"), that he had measured .7 volts at certain cow contact points in the plaintiffs' milking parlor. Kilgore called the defendant. The defendant told Kilgore to bond all metal surfaces in the parlor. When this was completed, the defendant, with the TVA's assistance, installed a monitor, which revealed very low voltage levels. Kilgore requested that the defendant install a device that would prevent stray voltage from coming into the plaintiffs' barn. However, neither the defendant nor the TVA employee was familiar with such a device.

In the spring of 1988, the plaintiffs' dairy herd suffered a severe outbreak of mastitis and other problems. After another request by Kilgore on October 25, 1988, the defendant, accompanied by a TVA representative, set up a recording voltmeter, which noted 1.4 volts on October 26, 1988. Again, Kilgore asked about the installation of a device, which he now knew to be a "Ronk blocker," to protect the dairy herd from stray voltage. Kilgore offered to pay for the blocker, and the defendant installed it later that same day. Since the defendant installed the blocker, milk production has improved steadily and mastitis has declined. Then, on September 8, 1989, the plaintiffs filed this complaint alleging that the defendant's stray voltage injured their dairy herd.

## III. ANALYSIS.

### A. *Statute of Limitations.*

Under Kentucky law, "[a]n action for injuries to ... cattle or other livestock" by a corporation "shall be commenced within one (1) year after the cause of action accrued." KRS 413.140(1)(b). The plaintiffs assert that the action was filed timely, because it was filed within one year of their discovery that the dairy herd's injuries were caused by stray voltage. For the following reasons, the Court holds that the "discovery rule" is not applicable to this property damage action and that, even if it was applicable, it would not change the Court's decision.

■ First, when the Kentucky General Assembly has intended for the "discovery rule" to apply to an action, it has expressly enacted an applicable statute. *See, e.g.,* KRS 342.316(3) ("discovery rule" applies to workers' compensation actions); KRS 413.-245 ("discovery rule" applies to professional service malpractice actions); KRS 413.-130(3) ("discovery rule" applies to fraud actions). Moreover, the same statute which established the one-year limitation for an action for injuries to cattle or other livestock by a corporation codified the "discovery rule" for medical malpractice and recovery of stolen property actions. KRS 413.140(1)(b), (2), (4), and (5).

Second, in the absence of a controlling Kentucky statute, no Kentucky court or any federal court construing Kentucky law has held that the "discovery rule" applies to property damage actions. In dicta, the Sixth Circuit Court of Appeals, construing Kentucky law, stated that KRS § 413.-140(1) "begins to run from the date 'the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.'" *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 641 (6th Cir.1986) (personal injury action) (quoting *Louisville Trust Co. v. Johns–Manville Prod. Corp.,* 580 S.W.2d 497, 501 (Ky.1979) (personal injury and wrongful death action)). However, this is a property damage action, not a personal injury action.

■ Third, the thrust of *Louisville Trust Co.* is that *"when an injury does not manifest itself immediately* the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfeasor." *Id.* at 500 (emphasis added). The Court stated that the injured party "should be allowed to have his day in court when *his injury was of an inherently unknowable nature." Id.* at 501 (emphasis added).

Here, it is undisputed that: (1) in April, 1987, a serviceman advised Kilgore that he had measured .7 volts at certain cow con-

tact points, and Kilgore contacted the defendant regarding the problem and requested that the defendant install a blocker to prevent the stray voltage from entering the barn; (2) in the spring of 1988, the plaintiffs' dairy herd suffered a severe outbreak of mastitis and other problems; (3) in October of 1988, Kilgore contacted the defendant regarding the stray voltage problem and the blocker again; and (4) the plaintiffs' complaint was not filed until September 8, 1989.

The plaintiffs learned that stray voltage endangered their dairy herd in April, 1987, and the plaintiffs knew about their dairy herd's injuries in the spring of 1988. The dairy herd's injuries were not "latent." Thus, even if the discovery rule applied to property damage actions, it would not change the Court's decision.

■ The plaintiffs also assert that the action was timely filed, because the limitations time does not begin to run or is tolled on a "continuing wrong," until the wrong is "over and done with." However, where the "discovery rule" is inapplicable, an action for an injury which occurred outside the limitations period is time-barred. *Lynn Mining Co. v. Kelly,* 394 S.W.2d 755, 757 (Ky.App.1965); *Fergerson v. Util. Elkhorn Coal Co.,* 313 S.W.2d 395, 399–400 (Ky. App.1958). In *Lynn Mining Co.,* the Court stated that a temporary nuisance is a "continuing trespass." *Lynn Mining Co.,* 394 S.W.2d at 757. Nonetheless, where a five-year limitations statute applied, "damages could not be recovered for so much of the injury as occurred more than five years before the commencement of the action[ ]." *Id.* Also, in *Fergerson,* the limitations statute was five years, and the Court stated "where the ... trespass continues, one may recover damages for the injury inflicted during the five-year period immediately preceding the instigation of the action." *Fergerson,* 313 S.W.2d at 399.

*Lynn Mining Co.* and *Fergerson* are analogous to this action. The plaintiffs allege that stray voltage injured their dairy herd. Essentially, this is a "trespass" to the dairy herd. So, even assuming that the dairy herd's exposure to stray voltage was

continuous, the plaintiffs' recovery is limited to damages for the injuries inflicted on the dairy herd during the one-year period immediately preceding the commencement of this action on September 8, 1989. Accordingly, the Court will grant summary judgment to the defendant on the plaintiffs' claims for injuries inflicted on their dairy herd prior to September 8, 1988, and deny summary judgment on the plaintiffs' claims for injuries inflicted on their dairy herd on or after September 8, 1988.

### B. *Judicial Review of the TVA's Rate Structure.*

■ The defendant contends that the plaintiffs wanted special services from the defendant without additional cost and, therefore, are requesting that the Court review the TVA's rate structure. The plaintiffs contend that they were willing to pay for the requested special services. In fact, the plaintiffs did pay for the Ronk blocker which the defendant installed for the plaintiffs in October, 1988. Viewing all inferences in the light most favorable to the plaintiffs, whether the plaintiffs were willing to pay for the requested special services is a genuine issue of material fact. Accordingly, the Court cannot grant the defendant summary judgment on this ground.

### C. *Strict Liability.*

■ Kentucky has recognized the strict liability doctrine. *Dealers Transp. Co. v. Battery Distrib. Co.,* 402 S.W.2d 441, 446 (Ky.1965) (citing Restatement (Second) of Torts § 402A). To prevail, based upon strict products liability, the plaintiffs must prove that:

1. Stray voltage is a defective or unreasonably dangerous "product";

2. The defendant sold stray voltage to the plaintiffs;

3. The defendant is engaged in the business of selling stray voltage; and

4. Stray voltage physically harmed the plaintiffs' dairy herd. *Id.; Radcliff Homes, Inc. v. Jackson,* 766 S.W.2d 63, 68 (Ky.App.1989) (citing Restatement (Second) of Torts § 402A).

■ First, a strict products liability action is unavailable against one who renders a service as opposed to one who manufactures or supplies a "product." *McKee v. Cutter Laboratories, Inc.,* 866 F.2d 219, 222 (6th Cir.1989). There is no Kentucky decision on point. However, the statute governing Kentucky's public utilities defines "service" as including any practice relating to the service of any utility, including, the voltage of electricity. KRS 278.-010(11). Moreover, the Kentucky Public Service Commission's regulations [1] consistently refer to the furnishing of electricity as a service. 807 KAR 5:011 *et seq.*

The defendant does not generate electricity. Rather, it receives electricity from TVA and distributes that power to its customers. Thus, under Kentucky law, the defendant does not manufacture a "product"; it provides a service. *See also Otte v. Dayton Power and Light Co.,* 37 Ohio St.3d 33, 523 N.E.2d 835, 838 (1988) (electricity distribution is a service).

■ Second, strict products liability requires a sale by one "in the business of selling" the particular "product." *See Radcliff Homes, Inc.,* 766 S.W.2d at 68. Stray voltage is an inherent by-product of every electrical transmission system. *Kolpin v. Pioneer Power and Light Co.,* 154 Wis.2d 487, 453 N.W.2d 214, 219 (App. 1990). It is "neither marketed nor marketable." *See Otte,* 523 N.E.2d at 838 (Stray voltage "has no benefit to [and] ... is clearly not the subject of a 'sale' to a consumer...."); *see also Kolpin,* 453 N.W.2d at 219 (Stray voltage "is not sold to or even used by the consumer."). The defendant, which is in the business of providing electrical service to its customers, distributed electricity to the plaintiffs. It is not "in the business of selling" stray volt-

---

**1.** The defendant is not subject to the Kentucky Public Service Commissions' regulations. Rather, it is regulated by the TVA Act and its con-

tract with the TVA. *See* KRS 96.550 *et seq.;* 16 U.S.C. § 831 *et seq.*

age, and it did not sell stray voltage to the plaintiffs. *Id.*

■ Finally, the ultrahazardous or abnormally dangerous activities doctrine "has not afforded recovery in cases of injury resulting from electrical current escaping from powerlines...." Annotation, *Applicability of Rule of Strict Liability to Injury from Electrical Current Escaping from Powerline*, 82 A.L.R.3d 218, 221. The "rules for strict liability for abnormally dangerous activities rarely apply to ... public duty" activities. *Kentucky Util. Co. v. Auto Crane Co.*, 674 S.W.2d 15, 18 (Ky.App.1983) (citing Restatement (Second) of Torts § 521 (1981). Electricity transmission "is a public necessity." *Id.* Thus, most courts have held that it is not an ultrahazardous activity. *Id.* (citing 82 A.L.R.3d 218). Moreover, Kentucky has not "adopted a strict liability standard for high voltage electricity transmission." *Id.*

In summary, stray voltage is not a "product," the defendant is not "in the business of selling" stray voltage and did not sell stray voltage to the plaintiffs, and electricity transmission is not an ultrahazardous or abnormally dangerous activity. Thus, the defendant cannot be strictly liable for the plaintiffs' dairy herd's injuries. Accordingly, the Court will grant the defendant summary judgment on the plaintiffs' strict liability claim.

### D. *Uniform Commercial Code Warranties.*

■ No published Kentucky decision determines whether electricity is a "good" under the Uniform Commercial Code (the "UCC"). Other states have considered the issue, and there is a split of authority. Some states have determined that electricity is not a "good." *See Singer Co. v. Baltimore Gas and Elec. Co.*, 79 Md.App. 461, 558 A.2d 419 (1989); *Navarro County Elec. Coop., Inc. v. Prince*, 640 S.W.2d 398 (Tex.App.1982); *Farina v. Niagara Mohawk Power Corp.*, 81 A.D.2d 700, 438 N.Y.S.2d 645 (N.Y.Sup.Ct.1981); *Buckeye Union Fire Ins. Co. v. Detroit Edison Co.*, 38 Mich.App. 325, 196 N.W.2d 316 (1972); *Coast Laundry, Inc. v. Lincoln City*, 9

Or.App. 521, 497 P.2d 1224 (1972). Other states have determined that electricity is a "good" when it supplied to the customer. *See, e.g., Bellotti v. Duquesne Light Co.*, 4 UCC Rep Serv 2d 1393 (Pa.Com.Pl.1987) ("Electricity may be classed as a 'good' once it passes through the customer's meter."); *Sunflower Elec. Coop., Inc. v. Tomlinson Oil Co.*, 7 Kan.App.2d 131, 638 P.2d 963 (1981). However, these decisions classify electricity as a "good" only after it has passed through the customer's meter.

These decisions support the conclusion that stray voltage is not a "good," because: (1) electricity is not a good; and/or (2) stray voltage does not pass through the customer's meter. *See, e.g., Zoller v. Niagara Mohawk Power Corp.*, 137 A.D.2d 947, 525 N.Y.S.2d 364, 367 (3 Dept.1988). Accordingly, the Court will grant the defendant summary judgment on the plaintiffs' implied and/or express warranty claims.

### E. *Exculpatory Contract Provision.*

■ The rules and regulations attached to the contract between the defendant and its customers are "controlling." *Ky. Agric. Energy Corp. v. Bowling Green Mun. Util. Bd.*, 735 F.Supp. 226, 230 (W.D.Ky.1989). The rules and regulations under which the defendant serves the plaintiffs provide that:

14. *Interruption of Service.* Distributor will use reasonable diligence in supplying current, but shall not be liable *for breach of contract* in the event of, or for loss, injury, or damage to persons or property resulting from interruptions in service, excessive or inadequate voltage, single-phasing, or otherwise unsatisfactory service, whether or not caused by negligence. (Emphasis added.)

■ Kentucky law disfavors exculpatory clauses and strictly construes them against the party relying upon them. *Hazard Mun. Hous. Comm'n v. Hinch*, 411 S.W.2d 686, 689 (Ky.1967). "Clear and explicit" contract language "is required to absolve one from ... liability." *Id.* However, the Court will uphold explicit exculpatory language in a public utility contract.

See, e.g., Nerren v. Ky. Water Serv. Co., 313 Ky. 151, 230 S.W.2d 615, 616 (1950). The above-quoted contract language explicitly absolves the defendant of liability "for breach of contract." Thus, the Court will grant the defendant summary judgment on the plaintiffs' contract claim.

### F. Negligence.

In Kentucky, "[a]ctionable negligence consists of a duty, a violation thereof, and consequent injury. The absence of any one of the three elements is fatal to the claim." M & T Chem., Inc. v. Westrick, 525 S.W.2d 740, 741 (Ky.App.1975). Whether the defendant owed a duty to the plaintiffs is a question of law for the Court. See Davies v. Collins, 349 F.Supp. 62, 66 (E.D.Ky.1972) ("Duty or standard of care is a question of law.").

Kentucky case law requires electric companies to "exercise the utmost care" to protect their customers and the public and to prevent the destruction of life or property. Ky. Power Co. v. Carter, 321 S.W.2d 410, 413 (Ky.1959) ("highest degree of care" standard); Ky. Power Co. v. Kilbourn, 307 S.W.2d 9, 12 (Ky.1957) ("utmost care and skill" standard); Clark's Adm'r v. Ky. Util., 289 Ky. 225, 230, 158 S.W.2d 134 (1942) ("utmost care"/"highest degree of care and skill" standard). Specifically, in Clark's Adm'r, the Court stated that:

> The public knows little about the peculiarities of electricity.... Thus, those who provide channels which are alluring to the nature of electricity must exercise the utmost care to employ the most modern devices to prevent its destruction of property or life. The utmost care in such cases is the highest degree of care and skill which may be known to be usable in the circumstances.

Id.

The defendant argues that it owed no duty to the plaintiffs, because "a reasonably prudent person under the circumstances ... would not [have] anticipate[d]" that stray voltage would injure the plaintiffs' dairy herd. Isbell v. Union Light, Heat & Power Co., 162 F.Supp. 471, 476 (E.D.Ky.1958). When deciding whether the defendant could have reasonably foreseen or anticipated that stray voltage would injure the plaintiffs' dairy herd, the Court must consider the defendant's past experience and the practice of others in similar circumstances. Vaught's Adm'x v. Ky. Util. Co., 296 S.W.2d 459, 461 (1956). However, "the law fixes duties for breach of which damages may be allowed and the person upon whom a duty is imposed may not relieve himself of liability by proof that he and others similarly situated have never performed the duty imposed upon them." Clark's Adm'r, 289 Ky. at 230, 158 S.W.2d 134. Here, the defense expert admits that the power industry has known about the potential effects of stray voltage on dairy cattle since the late 1970's and early 1980's. Thus, viewing all inferences in the plaintiffs' favor, whether the defendant could have reasonably foreseen or anticipated that stray voltage would injure the plaintiffs' dairy herd is a genuine issue of material fact. Accordingly, the Court cannot grant the defendant summary judgment on this ground.

### CONCLUSION

In summary, the Court will grant the defendant partial summary judgment, as follows:

1. The Court will grant the defendant summary judgment on the plaintiffs' claims for injuries inflicted on their dairy herd prior to September 8, 1988, and the plaintiffs' strict liability, implied and/or express warranty, and contract claims.

2. The Court will deny summary judgment on the plaintiffs' remaining claims.