FIRST NATIONAL BANK OF OVID *v.* STEEL.

1. LIMITATION OF ACTIONS — ACCRUAL OF CAUSE OF ACTION — FRAUDULENT REPRESENTATIONS.

A cause of action in assumpsit, under section 10421, 3 Comp. Laws, for fraudulent representations regarding the value of shares of stock deposited as collateral to secure the discount of promissory notes, accrues at the time the shares are accepted and the notes discounted in reliance on the representations, notwithstanding the assignment of the shares provides that "if the notes are not paid when due," the assignee shall "have the right to sell said stock."

2. SAME—KNOWLEDGE OF FRAUD—FACTS PUTTING ON INQUIRY.

Where, within ten days after the acceptance by plaintiff of certain shares of stock as collateral, in reliance on representa-

tions by defendants, who were stockholders of the company, that the company was solvent, the company executed mortgages in favor of its creditors, which, on foreclosure, brought insufficient funds to pay its debts, of which proceedings plaintiff had notice, plaintiff was chargeable with knowledge of facts putting it on inquiry as to the fraud perpetrated upon it, which prevent the application of section 9739, 3 Comp. Laws, suspending limitations in cases of fraudulent concealment.

Error to Clinton; Stone, J. Submitted June 15, 1906. (Docket No. 63.) Decided November 7, 1906.

Assumpsit by the First National Bank of Ovid against George A. Steel and David S. French to recover damages for fraud and deceit. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Affirmed.

*A. G. Shepard* (*Lyon & Moinet*, of counsel), for appellant.

*H. E. Walbridge*, for appellee Steel.

*William M. Smith*, for appellee French.

Blair, J. This is an action of assumpsit, brought under the provisions of section 10421, 3 Comp. Laws, to recover for the fraud and deceit of defendants, whereby plaintiff was induced, as it is alleged, to discount certain notes and receive as collateral security certain corporate stock. The declaration contains two special counts, to which are added the common counts.

The first count alleges, so far as we deem it pertinent to this opinion to state its substance: That the defendants and Robert M. Steel were stockholders in the St. Johns Manufacturing Company. That on or about February 29, 1896, defendants filed with the secretary of State and county clerk the corporation's annual report, fraudulently representing the financial condition of the company. That defendants represented to plaintiff that this report was a correct statement of the financial standing

and responsibility of the corporation, upon which representations plaintiff relied.

"And the plaintiff further avers that on, to wit, June 26, 1896, said bank, relying as aforesaid, discounted certain promissory notes for the R. M. Steel Company, Limited, a partnership association, limited, then and there existing at said village of St. Johns aforesaid as follows:

"1. A note of $210.50, dated June 26, 1896, payable thirty days after date, to the order of R. M. Steel at the First National Bank of Ovid, with interest at 7 per cent. after date, signed by the R. M. Steel Company, Limited, by Robert G. Steel, secretary, and indorsed by R. M. Steel.

"2. A note of $215.50, dated June 26, 1896, payable four months after date, to the order of R. M. Steel, at said bank, with interest at 7 per cent. after date, and signed and indorsed as aforesaid.

"3. A note of $2,508.36, dated June 26, 1896, payable January 1, 1897, at said bank, with interest at 7 per cent. per annum after date, signed and indorsed as aforesaid.

"4. A certain note made by Robert G. Steel for $63.65, dated June 26, 1896, indorsed by R. M. Steel Company, Limited.

"5. A certain note made by Robert G. Steel, indorsed by the R. M. Steel Company, Limited, dated June 26, 1896, for $63.65.

"6. A certain note made by Robert G. Steel and indorsed by the R. M. Steel Company, Limited, dated June 26, 1896, for $3,718.90.

"And the plaintiff further avers that said bank took, as collateral security to said notes, 1,500 shares of preferred stock of said St. Johns Manufacturing Company. And the plaintiff further avers that said R. M. Steel Company, Limited, was then and there at the time of the dates of said several notes, a partnership association, limited, organized and existing under the laws of said State of Michigan, and from the time of its organization to and after the time of said several signatures and indorsements it was financially embarrassed, crippled, worthless, and wholly insolvent, and that said R. M. Steel was before and during all of said time financially embarrassed, crippled, worthless, and wholly insolvent, and that defendants had full knowledge and notice in the premises during all of said time."

That on July 6, 1896, the St. Johns Manufacturing Company executed mortgages in favor of its creditors upon all of its assets, and on the 8th day of July, 1896, the defendant French was appointed receiver of said company and served until his discharge, March 6, 1899.

"And the plaintiff further avers that after the appointment of said receiver as aforesaid divers large claims and debts were duly filed and proven against said corporation to the amount of, to wit, $125,000, and upwards, and that there did not sufficient moneys, assets, and property of said corporation come to the hands of said receiver, although he exercised due and proper care and diligence in and about collecting and recovering the assets of said corporation, to enable him to pay the debts of said corporation, and that there still remains unpaid debts of said corporation, proven and filed as aforesaid, to the amount of $50,000 and upwards."

That at the time of the fraudulent representations the St. Johns Manufacturing Company was then and there, and continued thence hitherto, until the discharge of said receiver, as aforesaid, financially irresponsible, embarrassed, crippled, uncollectible, and insolvent, and that said defendants then and there during all of said time had notice and knowledge of the premises.

The second count alleges, in substance, that on June 26, 1896, the defendants, for the false and fraudulent purpose of obtaining from the plaintiff a large sum of money, to wit, $10,000, and of inducing said bank to purchase, receive, and discount certain promissory notes, described in the first count, and to accept and receive as collateral security therefor 1,500 shares of preferred stock of the St. Johns Manufacturing Company, and with knowledge that the representations were untrue, represented that the St. Johns Manufacturing Company was solvent, the stock worth $10 per share and upwards; that the defendants had been and were then stockholders and directors of the company; that the bank relied upon the representations and discounted said notes and received as collateral security 1,500 shares of the preferred stock of the St. Johns

Manufacturing Company and then and there paid value therefor; that the representations were false and untrue; that the company was irresponsible and insolvent.

The facts disclosed by the record may be briefly stated as follows: On June 26, 1896, plaintiff held a number of notes against Robert G. Steel and R. M. Steel, amounting to about $7,000. Two of the notes were then past due, one would become due June 30, and the remainder at different dates down to December 31, 1896. One of plaintiff's directors, with its attorney, called on the parties to the notes for payment or satisfactory security. Defendant Steel and his father, R. M. Steel, offered in settlement the notes described in the first count of the declaration, together with an assignment of 1,500 shares of the St. Johns Manufacturing Company as collateral security. Defendant George A. Steel, in connection with the offer of settlement, exhibited the annual report of the corporation and verbally represented that it was correct and that the stock was worth more than par. Relying upon these representations, plaintiff's representatives accepted the new notes and security and surrendered the old notes.

The assignment of the shares of stock contained a provision that it was made for the purpose of securing the payment of certain notes signed or indorsed by the R. M. Steel Company, Limited, "and if the said notes are not paid when due, then, in that event, said the First National Bank of Ovid to have the right to sell said stock either at private or public sale and apply the proceeds thereof toward the payment of said notes."

On July 6, 1896, the St. Johns Manufacturing Company executed mortgages upon its entire assets to secure its creditors, and R. M. Steel and the. R. M. Steel Company, Limited, made assignments for the benefit of their creditors. The defendant French was appointed receiver of the St. Johns Manufacturing Company, July 8, 1896, and sold its assets on January 24, 1899, not realizing sufficient therefrom to pay its creditors. Plaintiff had notice of the appointment of the receiver, the assignments for the

benefit of creditors, and the receiver's sale about the time of or in a few weeks after their occurrence, and instructed its attorney "to watch out for our interests."

Plaintiff's vice president testified:

"Mr. High reported to us as officers of the bank different steps that were taken. I can't tell you whether he made a report a short time after the company went into the hands of a receiver. My mind is entirely blank on that subject. I could not give you the dates. I presume it was within a few months. That is my recollection of it. * * *

"We were trying to collect these notes. They were placed in the hands of Mr. Spalding. I don't swear the paper was put in his hands, but our interest was. I represented the bank at a consultation with Mr. Spalding about our claim against R. M. Steel and Robert G. Steel, the paper we now have. Mr. High and I went to Mr. Spalding in reference to the interests of the bank against the Steels in his hands. That was at a creditors' meeting. A meeting of the creditors of the R. M. Steel Company, Limited, and R. M. Steel. My judgment is that this was shortly after the assignment. I don't know the date of the assignment. We consulted with Mr. High in a general way about what we had—the paper that we had, etc. I think we learned in January, 1902, that this stock was worthless from our attorney. * * *

"I don't recollect of any definite attempt being made, after the appointment of the receiver for the St. Johns Manufacturing Company previous to January, 1902, to ascertain whether or not there was any value to this stock, for the simple reason that our interests were placed with the other creditors in the collection of what belonged to us. I recollect nothing in regard to trying to ascertain the actual value of this stock."

Plaintiff's counsel allege in their supplemental brief that:

"The evidence in this case shows that on July 6, 1896, 10 days after this stock was represented as being worth par and the company to be in a prosperous condition, it, through these defendants and others, made to defendant French real estate and chattel mortgages covering all its property of every kind to secure its creditors. These mortgages were afterwards foreclosed and not enough

realized to pay over 60 per cent. of its debts. Certainly this was evidence, and strong evidence, too, that this company was insolvent on the 26th of June. It was also shown that from the 26th of June to July 6th the condition of the company was the same."

Plaintiff collected $1,875 on the notes of R. G. Steel and the notes passed out of the possession of the bank. Plaintiff was unable to collect anything on the other notes and commenced this action in October, 1902. Defendants gave notice under their plea of the statute of limitations. The circuit judge directed a verdict for the defendants upon the grounds that:

1. The alleged fraudulent representations were not wholly in writing, as required by section 9518, 3 Comp. Laws.

2. That no damages were proven to have resulted.

3. That the cause of action was barred by the statute of limitations.

Plaintiff has removed the record to this court for review upon writ of error.

We are of the opinion that the court properly directed a verdict for defendants upon the ground that the cause of action was barred by the statute of limitations. Plaintiff was damnified, and its cause of action accrued as soon as it discounted the notes and accepted the worthless shares of stock in reliance upon the fraudulent representations. *Briggs* v. *Brushaber*, 43 Mich. 330; *Short* v. *Cure*, 100 Mich. 418.

Plaintiff contends, however, that the provision in the assignment that, "if said notes are not paid when due, then in that event the First National Bank of Ovid to have the right to sell said stock," etc., "puts this stock in the position of a guarantor of the payment of these notes;" that the cause of action for the fraudulent representations was contingent upon the nonpayment of the notes when due, thereby distinguishing the case from *Briggs* v. *Brushaber.*

In *Briggs* v. *Brushaber* the plaintiff loaned her money

upon a note and mortgage. In that case defendant's counsel took the position in their brief that "the loss, if any, of the plaintiff depends upon a contingency, viz., her failure to realize the amount due her upon the securities which she holds. If through them she can realize such amount, then she has suffered no damage. It is not alleged that when this action was commenced any sum had become due upon the note and mortgage." The contingency in that case was the same as in this. The securities became enforceable in both cases upon failure to pay the notes at maturity. The notes and collateral securities were subject to sale and transfer in this case as were the note and mortgage in that, and the rule laid down in *Briggs* v. *Brushaber* must, therefore, govern.

Plaintiff also contends that it did not have knowledge of the fraud practiced until 1902, and that its cause of action was therefore saved by section 9739, 3 Comp. Laws. If it can be plausibly claimed that the facts known to plaintiff and its attorney were not such as to conclusively imply knowledge of the fraud, they were certainly of such a character as to notify the plaintiff of the great probability of fraud, and therefore to put it upon inquiry.

The statute was not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by facts known, and the plaintiff must be held chargeable with knowledge of the facts, which it ought, in the exercise of reasonable diligence, to have discovered. *Purdon* v. *Seligman*, 78 Mich. 132; *Higgins* v. *Crouse*, 147 N. Y. 411; *Burke* v. *Smith*, 16 Wall. (U. S.) 390.

The judgment is affirmed.

Grant, Montgomery, Ostrander, and Moore, JJ., concurred.