CHASE v SABIN

Docket No. 95889. Argued January 11, 1994 (Calendar No. 9). Decided
    May 17, 1994.

Durward Chase, Jr., brought a negligence action in the Mar-
    quette Circuit Court against Fred C. Sabin, M.D., and Mar-
    quette General Hospital, alleging that the loss of anesthetic
    control by a certified registered nurse anesthetist during cata-
    ract surgery performed by Dr. Sabin in 1963, which was discov-
    ered during the pursuit of a worker's compensation claim in
    1988, led the partially conscious plaintiff to damage his eye and
    eventually lose his vision. The court, Edward A. Quinnell, J.,
    granted summary disposition for the hospital on the ground
    that the statute of limitations barred the negligence claim. The
    Court of Appeals, GRIFFIN, P.J., and WEAVER, J. (McDONALD, J.,
    dissenting), affirmed in an unpublished opinion per curiam
    (Docket No. 143398). The plaintiff appeals.

In an opinion by Chief Justice CAVANAGH, joined by Justices
LEVIN, BOYLE, and MALLETT, the Supreme Court held:

In a cause of action for the negligent acts of a hospital and
its agents, the discovery rule governs when the cause of action
accrues.

1. A statute of limitation should provide plaintiffs with a
reasonable opportunity to commence suit. The term "wrong" as
stated in the accrual statute, designates the date on which the
plaintiff was harmed, as opposed to the date the defendant
acted negligently. Because statutes of limitation do not evi-
dence a legislative intent to extinguish a cause of action before
the plaintiff is aware of the possible cause of action, the
discovery rule was adopted.

2. In this case, while the plaintiff's claim lies in negligence,
the essence of the hospital's alleged wrong is substantially
similar to medical malpractice. In malpractice cases, the period
of limitation does not begin to run until the date the plaintiff
discovers, or by the exercise of reasonable care should have

REFERENCES
Am Jur 2d, Limitation of Actions §§ 136, 137, 146.
See ALR Index under Limitation of Actions.

discovered, the wrongful act. Because a statute of limitation is not a statute designed to abrogate a common-law cause of action, it must afford a reasonable time within which suit may be brought.

3. Statutes of limitation are intended to afford plaintiffs a reasonable opportunity to bring suit, to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend, to relieve a court system from dealing with stale claims, and to protect potential defendants from protracted fear of litigation. In this case, the twenty-six-year-old negligence claim is stale; however, it is inappropriate to prohibit the plaintiff's suit for circumstances beyond his control. The hospital and its agent were in a superior position to recognize the occurrence of the negligent act. They controlled the evidence as well as the plaintiff's knowledge of the evidence. While the plaintiff was aware that he lost his eye, because of the representation by Dr. Sabin and the silence of the hospital and nurse, he was ignorant that improper anesthetization may have caused the deterioration of his eye.

Reversed and remanded for further proceedings.

Justice RILEY, joined by Justices BRICKLEY and GRIFFIN, dissenting, stated that, absent allegations of a duty to disclose or acts of fraudulent concealment, on balance, the policies behind the statute of limitations bear in favor of finding this claim stale because of the defendant's inability to adequately defend, thus making it inappropriate to impose the discovery rule.

LIMITATION OF ACTIONS — NEGLIGENCE — HOSPITALS — DISCOVERY
RULE — ACCRUAL OF CAUSES OF ACTION.

In a cause of action for the negligent acts of a hospital and its agents, the discovery rule governs when the cause of action accrues.

*Charfoos & Christensen, P.C.* (by *David R. Parker*), for the plaintiff.

*Bridges & Houghton* (by *Caroline Bridges*) for the defendant.

CAVANAGH, C.J. In this appeal, we are asked to determine when a cause of action for the negligent

acts of a hospital and its agent[1] accrues for statute of limitations purposes.[2] We hold that the discovery rule governs when the cause of action accrues. Accordingly, we reverse the decision of the Court of Appeals.

I

The plaintiff, Durward Chase, Jr., underwent consecutive eye surgeries on April 12 and April 17, 1963, to remove cataracts, apparently caused by job-related welding flashes. Defendant, Dr. Fred C. Sabin, performed both surgeries while the plaintiff was a patient at the defendant hospital.

In 1963, the removal of cataracts required two procedures. During the first procedure, the surgeon broke up the lens of the eye, allowing the lens to dissolve so it could be washed out of the eye during the second procedure. While the first procedure was generally performed in a hospital, only a local anesthetic was used. Dr. Sabin administered the local anesthetic and completed the first procedure without incident.

---

[1] This opinion does not address whether the discovery rule governs the date of accrual for other negligence actions.

[2] The pertinent statute of limitations is the one in effect when the plaintiff's cause of action arose. *Winfrey v Farhat,* 382 Mich 380, 389-390; 170 NW2d 34 (1969). We agree with the conclusion of the Court of Appeals that "[a] cause of action arises, for purposes of determining the applicable statute of limitations, when the alleged negligent act occurs, not when the plaintiff discovers or should have discovered that negligence or malpractice." *Wallisch v Fosnaugh,* 126 Mich App 418, 422-423; 336 NW2d 923 (1983). As a result, the statute of limitations effective in 1963 governs the disposition of this suit.

The liability of the hospital is premised upon the negligence of a certified registered nurse anesthetist. In 1963, any negligence by a nurse or a hospital was considered ordinary negligence, and not medical malpractice. *Kambas v St Joseph Hosp,* 389 Mich 249; 205 NW2d 431 (1973). While not controlling in this case, the Legislature has since characterized the negligence by a nurse or hospital as medical malpractice. 1975 PA 142, MCL 600.5838; MSA 27A.5838. See also *Adkins v Annapolis Hosp,* 420 Mich 87; 360 NW2d 150 (1984).

The second procedure required the cutting of the cornea to facilitate the irrigation of the previously broken up lens. The preferred anesthetic for the second procedure was general anesthesia because under general anesthesia, you have an immobile eyelid and patient. Unlike the first procedure, Dr. Sabin did not administer the anesthetic during the second procedure. Instead, Nurse Neff, a nurse anesthetist and employee of the defendant hospital, administered the general anesthesia.[3]

Despite Dr. Sabin's instructions that the anesthetist keep the plaintiff asleep, the plaintiff awoke soon after the operation began.[4] At this point, the plaintiff involuntarily squeezed the eye hard enough that some of the vitreous humor[5] came out of the eye and the cortex extruded. After this incident, Dr. Sabin completed the operation as best as he could.

After the operation, the doctor did not inform the nineteen-year-old plaintiff or his father about the loss of vitreous humor because such a loss was not necessarily incompatible with a successful result. The doctor never informed the plaintiff, who was treated by the doctor until 1988, of the loss despite the fact that the plaintiff's eye rapidly deteriorated, resulting in the removal of the eye one year after the procedures. Instead, Dr. Sabin informed the plaintiff that a detached retina, which he opined resulted from the plaintiff's fall

---

[3] While the hospital records fail to identify who administered the anesthesia during the plaintiff's second procedure, Dr. Sabin distinctly recalled Nurse Neff as the person who administered the anesthesia. Despite the numerous procedures that Dr. Sabin performed over his career, he recalled Nurse Neff's identity because of the unexpected incident that occurred during the second procedure.

[4] The plaintiff had not really awakened—he had simply advanced from a deep stage of anesthetization to a somewhat lighter stage. Consequently, he had no memory of the incident.

[5] Vitreous humor is a jelly-like material that maintains the shape of the eye.

off a horse a few weeks following surgery, caused the decline of the eye.

In 1988, during the pursuit of a worker's compensation claim, the plaintiff's attorney obtained a hospital record of the surgery that indicated that during the second procedure the plaintiff lifted his hand and squeezed his eye. In April 1989, the plaintiff commenced suit against Dr. Sabin and the defendant hospital.[6] The plaintiff alleged that the loss of anesthetic control led the partially conscious plaintiff to damage his eye and eventually lose his vision.

The trial court granted the defendant hospital's motion for summary disposition on the ground that the statute of limitations barred the plaintiff's negligence claim.[7] The Court of Appeals affirmed in a two to one unpublished per curiam opinion.[8] This Court granted plaintiff's application for leave to appeal.[9]

II

The statute governing the plaintiff's claim affords a plaintiff three years from the date the

---

[6] Nurse Neff died before the plaintiff filed suit.

[7] While the trial court refused to extend the discovery rule to the negligence action, it nevertheless made a determination concerning the discovery rule's effect in the present action:

> For review purposes only, I reject defendant hospital's claim that plaintiff should have discovered his claim in December of 1963 when he lost his eye; if a discovery rule were available, I would have no hesitancy in holding that plaintiff did not discover or have good cause to discover negligence on the part of the hospital until October of 1988, when his worker's compensation attorney obtained the medical records from the 1963 procedure.

[8] Judge McDONALD dissenting.

[9] The trial court also granted Dr. Sabin's motion for summary disposition on the ground that there was no genuine issue of material fact in dispute. The plaintiff failed to pursue this issue on appeal. As a result, the opinion does not address this issue.

claim accrues to commence a negligence suit.[10] The corresponding accrual statute provided that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827; MSA 27A.5827. Under limited circumstances, this Court has determined that the discovery rule governs the date certain claims accrue, despite identical statutory language. See *Moll v Abbott Laboratories,* 444 Mich 1, 12-13; 506 NW2d 816 (1993); *Larson v Johns-Manville Sales Corp,* 427 Mich 301, 308, 312; 399 NW2d 1 (1986); *Johnson v Caldwell,* 371 Mich 368, 379; 123 NW2d 785 (1963).[11]

The policy prompting the Court to utilize the discovery rule generally centers on our attempt to avoid the premature bar of a cause of action and to provide, instead, a reasonable time to bring suit.

A

A statute of limitation should provide plaintiffs with a reasonable opportunity to commence suit. For over one hundred years, this Court has sought

_____

[10] The statute in effect in 1963 stated:

No person may bring or maintain any action to recover damages for injuries to persons or property unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

\* \* \*

(7) The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property. [1961 PA 236, MCL 600.5805; MSA 27A.5805.]

[11] *Johnson* was superseded by statute as stated in *Hawkins v Regional Medical Laboratories, PC,* 415 Mich 420, 428, n 2; 329 NW2d 729 (1982) ("*Dyke* [*v Richard,* 390 Mich 739; 213 NW2d 185 (1973)], entitled a plaintiff to a two-year extension on the limitations period from the time of discovery of malpractice. 1975 PA 142 has since reduced the extension to six months from the time of discovery or two years from last treatment, whichever is greater").

to fulfill this purpose, construing statutes accordingly. As Justice COOLEY explained:

> The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. . . . It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought . . . . [*Price v Hopkin,* 13 Mich 318, 324-325 (1865).]

Our adherence to this principle resulted in our holding that the term "wrong," as stated in the accrual statute, designated the date on which the plaintiff was harmed by the defendant's negligent act, as opposed to the date the defendant acted negligently. *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972). Necessity dictated such a conclusion because an opposite interpretation could potentially bar a plaintiff's legitimate cause of action before the plaintiff's injury.

Similarly, because statutes of limitation do not evidence a legislative intent to extinguish a cause of action before the plaintiff is aware of the possible cause of action, we have adopted the discovery rule in the appropriate instances. Last term, in *Moll, supra* at 13, we held that the discovery rule controls the date a pharmaceutical products liability action accrues. "If the three-year period of limitation began to run at the time of the defen-

dant's breach, most, if not all, claims would be barred before the plaintiff had reason to know of the injury and the cause of the injury. Such an interpretation seeks 'to declare the bread stale before it is baked.' " (Citation omitted.) The same reasoning compelled our application of the discovery rule to products liability actions premised on asbestos related injuries, *Larson, supra.* In *Southgate School Dist v West Side Construction Co,* 399 Mich 72, 82; 247 NW2d 884 (1976), we held that the discovery rule governs the date a breach of warranty claim accrues, providing plaintiffs with an adequate opportunity to bring suit. See also *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974) (the discovery rule governs the accrual of negligent misrepresentation cases), and *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973) (the discovery rule governs the accrual of medical malpractice cases).

B

While the plaintiff's claim lies in negligence, the essence of the hospital's alleged wrong is substantially similar to medical malpractice. In fact, under the current statutory scheme,[12] an action for the identical alleged wrong would be correctly characterized as a medical malpractice action. In light of the similarity, it is beneficial to review our resolution of analogous medical malpractice cases.

In *Johnson, supra,* the plaintiff, experiencing post partum complications, relied on her doctor's advice that nothing could be done for her condition. Despite a three-year lapse from the date of the doctor's alleged wrong to the date the plaintiff filed suit, the Court held that the two-year medical malpractice period of limitation did not bar the

---

[12] See MCL 600.5838; MSA 27A.5838.

plaintiff's suit.[13] The Court refused to impose on the plaintiff a duty of discovering the wrong, despite the obvious physical complication, before another physician's advice regarding the earlier breach. The Court refused to "punish the patient who relies upon his doctor's advice and place[ ] a premium on skepticism and distrust." *Id.* at 379. As a result we held:

> The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act. [*Id.*]

In *Dyke, supra,* we examined whether the discovery rule, as applied to malpractice cases, continued to have effect in light of the Legislature's codification of the last treatment rule.[14] Because a

---

[13] At the time, the applicable statute read:

"Actions . . . for malpractice of physicians . . . shall be brought within 2 years from the time the cause for action accrues and not afterwards." [*Johnson* at 371, quoting 1956 CL 609.13; Stat Ann 1959 Cum Supp § 27.605.]

[14] At the time we decided *Dyke,* MCL 600.5805(3); MSA 27A.5805(3) and MCL 600.5838; MSA 27A.5838 set forth the limitation period for malpractice cases.
Section 5805 provided:

No person may bring or maintain any action to recover damages for injuries to persons . . . unless, after the claim first accrued . . . he commences the action within the periods of time prescribed by this section.

\* \* \*

(3) The period of limitations is 2 years for actions charging malpractice.

Section 5838 provided:

A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession

statute of limitation is not a statute designed to abrogate a common-law cause of action, we applied the discovery rule, refusing to infer a legislative intent to abolish the plaintiff's cause of action. "Since '[i]t is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought . . . ,' a statute which extinguishes the right to bring suit cannot be enforced as a law of limitation." *Id.* at 746 (citation omitted).

C

We would be remiss if we examined the issue presented without considering the additional policies prompting the adoption of statutes of limitation. While one policy is to afford plaintiffs a reasonable opportunity to bring suit, statutes of limitation are also intended to " 'compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend'; 'to relieve a court system from dealing with "stale" claims, where the facts in dispute occurred so long ago that evidence was either forgotten or manufactured'; and to protect 'potential defendants from protracted fear of litigation.' " *Bigelow v Walraven,* 392 Mich 566, 576; 221 NW2d 328 (1974).

Admittedly, the plaintiff's twenty-six-year-old negligence claim is stale; however, we deem it inappropriate to prohibit a plaintiff's suit for circumstances beyond his control. The evidence that a plaintiff will generally rely on to pursue a negligence claim against a hospital is the hospital and

*accrues at the time that person discontinues treating or otherwise serving the plaintiff* in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose. [Emphasis added.]

physician's records. Thus, any concerns that this class of plaintiffs will manufacture the evidence are tenuous. While it may be true that the defendant hospitals, because of the lapse in time, may encounter difficulty in defending the negligence action, the plaintiffs, who carry the burden of proof, are equally handicapped in their attempt to establish the hospital's negligence.

The statute of limitations furthers the sound public policy of establishing a time frame beyond which defendants will not be forced to defend. However, in our quest to fulfill this purpose, we will not allow questionable acts, of which patients are unaware and which are followed by silence, to combine with the passage of time to bar suit. Similar to the situation in a medical malpractice case, the hospital and its agent are in a superior position to recognize the occurrence of a negligent act. Furthermore, these defendants generally control the evidence, as well as the plaintiff's knowledge of the evidence.

This conclusion is readily supported by a review of the facts in this case. While plaintiff Chase was aware that he lost his eye, he, like the plaintiff in *Johnson,* was ignorant, because of representations by Dr. Sabin and the silence of the defendant hospital and Nurse Neff, that improper anesthetization may have caused the deterioration of the eye. The plaintiff was unconscious at the time and has never had any recollection of the committed negligence. The information was in the hands of the doctor, nurse, and hospital, noted in the records, yet the plaintiff was unaware of the possible wrongdoing. The plaintiff had no reason to be skeptical or distrustful of Dr. Sabin's explanation for his eye's deterioration.

Our sense of fair play in providing plaintiff with a reasonable opportunity to bring suit, along with

our conclusion regarding the additional policies underlying the statute of limitations, compels the holding that the discovery rule governs the accrual date for negligence claims, pursued against hospitals and their agents, which are similar to malpractice claims.[15]

### III

For the foregoing reasons, we hold that the discovery rule governs the accrual date of the plaintiff's cause of action. Accordingly, the judgment of the Court of Appeals is reversed.[16] We

[15] The defendant claims that in all instances in which the Court has applied the discovery rule, it has done so because the plaintiff had yet to incur damages or become aware of the injury. The defendant's point, however, is misguided. While a plaintiff may be aware of a result—i.e., the loss of an eye, the plaintiff may nevertheless be unaware that this was "damage" in the legal sense—i.e., resulting from a wrongful act. Furthermore, in *Moll,* we stated that the discovery rule was a useful theory because an injured plaintiff is often unaware of damage *and* its cause:

> A cause of action for personal injuries accrues when a plaintiff can allege, in a complaint, each element of the asserted claim. Generally, a well-pleaded claim for personal injury must allege that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, (3) the defendant's breach was the proximate cause of the plaintiff's injuries, and (4) damage. *Connelly* at 150. However, in a pharmaceutical products liability action, as in other cases in which we have applied the discovery rule, *the defendant's duty and breach generally predate the plaintiff's awareness of an injury and of its cause.* Accordingly, under the discovery rule, the plaintiff's *claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered, the two later occurring elements: (1) an injury, and (2) the causal connection between plaintiff's injury and the defendant's breach.* See, generally, *Caldwell, Polgar,* and *Larson, supra.* [*Moll* at 15-16. Emphasis added.]

[16] The defendant asserts that even if the discovery rule is applicable to the case at bar, the Court, in the alternative, should apply the current legislatively mandated cap on the discovery rule found in MCL 600.5838a; MSA 27A.5838(1). This statute of limitations, applicable to medical malpractice claims (which now includes claims for the

remand this case to the Court of Appeals for a determination regarding the plaintiff's unaddressed claim of error.[17]

LEVIN, BOYLE, and MALLETT, JJ., concurred with CAVANAGH, C.J.

RILEY, J. (*dissenting*). In this case, we must decide whether a discovery rule should be applied to the 1963 statute of limitations for negligence actions. Because I believe the instant claim is stale, so that it cannot be reasonably defended, I would decline to extend the discovery rule in the instant case. Therefore, I would affirm the Court of Appeals decision, albeit on different grounds.

I

The facts of this case reflect a rather unfortunate event—one certainly deserving of sympathy. Plaintiff lost the use of his eye, allegedly because of the negligence of a nurse anesthetist who improperly administered anesthesia during surgery

negligent acts of licensed health care facilities and their agents), includes a discovery provision, but caps the time frame for discovery at six years from the date of the act or omission that is the basis for the claim. As noted earlier, however, the applicable statute of limitations is the one in effect when the plaintiff's cause of action arose. See n 2. The plaintiff's claim is not governed by the current statutory scheme, but the statute in effect in 1963. We did not impose a cap on the discovery rule and its role in medical malpractice cases in 1963. Similarly, we discern no requirement to impose a cap on the plaintiff's cause of action.

[17] In addition to granting summary disposition on the basis of the statute of limitations, MCR 2.116(C)(7), the trial court also granted the defendant hospital's motion for summary disposition pursuant to MCR 2.116(C)(10). The trial court determined that there was no genuine issue of material fact regarding Nurse Neff's negligence because the plaintiff failed to submit sufficient evidence regarding the standard of care. While the plaintiff raised and briefed the propriety of the trial court's action at the Court of Appeals, the majority of the panel did not address or resolve the issue. Accordingly, a remand to the Court of Appeals is appropriate.

on the eye. However, our sympathy for this unfortunate event should not dictate the rule of law or obviate the policies behind a statute of limitations. Indeed, "the statute of limitations is not a disfavored plea but a perfectly righteous defense, a meritorious defense . . . ." *Bigelow v Walraven,* 392 Mich 566, 570; 221 NW2d 328 (1974).

Accordingly, I believe the Court should conduct a two-step inquiry when deciding whether to impose the discovery rule in the instant action where the statute clearly does not impose such a rule. First, the Court should consider whether plaintiff had a reasonable time to file suit, a policy implicit in any statute of limitations.[1] To satisfy this requirement, courts have traditionally looked to whether the plaintiff could allege all the elements of his claim within the statute of limitations. See *Moll v Abbott Laboratories,* 444 Mich 1, 13; 506 NW2d 816 (1993). If the plaintiff could not allege all the elements of his claim, then the Court should balance the plaintiff's right to have a reasonable time to file suit against the remaining policies behind the statute of limitations to determine whether the discovery rule is appropriate for the instant case. *Id.* at 13-14. In the case at bar, I agree that plaintiff could not have discovered the causal connection between the injury and the alleged negligence within the three-year statute of limitations. However, I disagree with the majority's conclusion that the discovery rule would not offend the other policies behind this statute of limitations. Accordingly, it is on this basis that I dissent.

II

While one purpose of a statute of limitations is

---

[1] *Price v Hopkin,* 13 Mich 318, 324-325 (1865).

to provide a plaintiff a reasonable opportunity to bring suit, the primary purpose is

> one of fairness to the defendant. There comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when *"evidence has been lost, memories have faded, and witnesses have disappeared."* [*Developments in the law—Statutes of limitations,* 63 Harv L R 1177, 1185 (1950). Emphasis added.]

Over the years, this Court has described the various policies in the following manner:

> They encourage the prompt recovery of damages, *Buzzn v Muncey Cartage Co,* 248 Mich 64, 67; 226 NW 836 (1929); they penalize plaintiffs who have not been industrious in pursuing their claims, *First National Bank of Ovid v Steel,* 146 Mich 308; 109 NW 423 (1906); they "afford security against stale demands when the circumstances would be unfavorable to a just examination and decision," *Jenny v Perkins,* 17 Mich 28, 33 (1868); they relieve defendants of the prolonged fear of litigation, *Bigelow, supra* [at] 576; they prevent fraudulent claims from being asserted, *Bailey v Glover,* 88 US (21 Wall) 342; 22 L Ed 636 (1875); and they " 'remedy . . . the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.' " *Lenawee County v Nutten,* 234 Mich 391, 396; 208 NW 613 (1926). [*Lothian v Detroit,* 414 Mich 160, 166-167; 324 NW2d 9 (1982).]

In the instant case, plaintiff brings this claim *twenty-six* years after the alleged negligence. As does the majority, I believe this renders the claim stale. However, unlike the majority, I believe the reasons for finding the claim stale and thereby

precluding plaintiff's claim are compelling and cannot be overcome by simply noting that plaintiff is equally handicapped. Indeed, there are serious evidentiary problems arising from the death of the nurse anesthetist (the alleged tortfeasor), the loss of memory of the ophthalmologist who performed the surgery, and plaintiff's lack of conscious memory of the procedure. The lack of primary evidence regarding the nurse's duty and breach, and her role in causing the injury, renders the instant action virtually impossible to reasonably defend. The only evidence regarding this operation would be the notation by Dr. Sabin indicating inadequate anesthesia, his deposition, and the testimony of various experts regarding anesthesia in 1963. In my view, these serious evidentiary problems unfairly infringe upon the defendant's ability to adequately defend and thereby run counter to one of the primary concerns of a statute of limitations— the fear of defending a claim on the basis of lost or inaccurate evidence of the alleged negligence, thereby presenting circumstances that "would be unfavorable to a just examination and decision." *Jenny, supra* at 33.

However, the majority attempts to minimize this concern by contending that plaintiff will primarily rely on documentary evidence in pursuing his claim, thereby lessening the need for testimonial evidence. *Ante* at 199-200. This same argument was made and accepted in *Moll, supra* at 14, a products liability suit. However, the instant action is substantially different from *Moll,* and thus the rationale employed therein is inapposite. Unlike a products liability action, the instant negligence action does not rely primarily on documentary evidence, especially where there is only one notation by Dr. Sabin indicating inadequate anesthesia. Instead, the more traditional and prudent approach to proving or defending the action is via testimony regarding the standard of care, breach,

and causation, all referring to what actually occurred in the operating room. However, there is no one alive, or at least no one with an actual memory of the event, to testify regarding what occurred in the operating room. Therefore, the only testimony would be from experts indicating the standard of care in 1963, with mere speculation regarding whether the facts of the case indicate a breach or whether this breach actually caused the injury.

Furthermore, unlike a products liability action, the passage of time will not increase the accuracy of the evidence, but instead reduce its accuracy. *Id.* The death of the primary tortfeasor and the loss of memory by Dr. Sabin clearly evidence this fact. Consequently, I believe the instant action implicates a problem with lost or inaccurate information, one of the primary purposes behind the statute of limitations.

Moreover, I cannot accept the majority's conclusion that defendant's primary control of the evidence renders it appropriate to apply the discovery rule. There are no allegations that the hospital or Dr. Sabin prevented plaintiff from discovering this information, and there certainly are no allegations supporting the theory that the hospital or Dr. Sabin had a duty to disclose possible negligence. Indeed, there is no duty to disclose one's negligence.

Furthermore, I do not accept the majority's contention that "plaintiff had no reason to be skeptical or distrustful of Dr. Sabin's explanation for his eye's deterioration." *Ante* at 200. This is not the test to be used in deciding whether to impose the discovery rule or for overcoming the policy justifications behind the statute of limitations. The test is whether (1) the plaintiff can allege all the elements of the offense, and (2) whether the discovery rule would offend the other

policies behind the statute of limitations. In my view, the majority's reasoning would only be relevant in the eventual application of the discovery rule, which would involve a question of fact, at least when the facts are controverted. *Moll, supra* at 27-28.

Moreover, the majority's reasoning leads to its implied conclusion that Dr. Sabin fraudulently concealed a known negligence by some affirmative representation. See, e.g., *Buchanan v Kull*, 323 Mich 381; 35 NW2d 351 (1949); *Eschenbacher v Hier*, 363 Mich 676; 110 NW2d 731 (1961). As previously indicated, the hospital or Dr. Sabin did not have a duty to disclose. Apparently realizing this fact, the majority couches the hospital's and Dr. Sabin's actions in terms of "questionable acts . . . followed by silence." *Ante* at 200. However, the majority misses an important distinction; the plaintiff never claimed fraudulent concealment. If plaintiff had alleged such an action, there would be no need to apply a discovery rule in this case because the Legislature already provided the discovery rule by statute:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. [MCL 600.5855; MSA 27A.5855.][2]

---

[2] A claim of fraudulent concealment is the subject of a completely different body of law. Indeed, the majority in *Johnson v Caldwell*, 371 Mich 368, 379; 123 NW2d 785 (1963), recognized these distinct claims: The discovery "rule is not to be confused with the completely distinct concept of fraudulent concealment, which is the subject of an express

Accordingly, I reject the majority's characterization of this claim wherein it implies a claim of fraudulent concealment and implies that the hospital or Dr. Sabin had a duty to disclose possible negligence. In my view, this does nothing to overcome the policies behind the statute of limitations. Furthermore, the majority's characterization indicates its view of what the law should be without considering the fact that the Legislature already provided for its implied conclusion via the fraudulent concealment statute.[3]

III

Accordingly, absent allegations of a duty to disclose or acts of fraudulent concealment, I believe that on balance, the policies behind the statute of limitations bear in favor of finding the instant claim stale because of defendant's inability to adequately defend. On this basis, I deem it inappropriate to impose the discovery rule in this case.

BRICKLEY and GRIFFIN, JJ., concurred with RILEY, J.

---

statute which has often been construed." In my view, the majority muddies the waters by implying both that the hospital or Dr. Sabin had a duty to disclose and that Dr. Sabin fraudulently concealed possible negligence. Plaintiff did not argue either theory, and, nevertheless, the majority's contentions are not appropriate in determining whether to apply the discovery rule in the instant case, where the statute specifically addresses the majority's characterization by express statute.

[3] "We have no other duty to perform than to construe the legislative will as we find it, without regard to our own views as to the wisdom or justice of the act." *McKibbin v Corp & Securities Comm*, 369 Mich 69, 81; 119 NW2d 557 (1963).