SCHAENDORF v CONSUMERS ENERGY COMPANY

Docket No. 269661. Submitted February 6, 2007, at Grand Rapids. Decided March 6, 2007. Approved for publication May 15, 2007, at 9:05 a.m.

John and Connie Schaendorf brought an action in the Allegan Circuit Court against Consumers Energy Company, alleging trespass, nuisance, and negligence involving the effects of stray voltage on their dairy herd. The defendant moved for summary disposition, and the court, George R. Corsiglia, J., granted the motion with respect to the trespass claim, but denied the motion with respect to the other claims. The defendant appealed.

The Court of Appeals *held*:

1. The trial court erred by applying the common-law discovery rule to conclude that the plaintiffs' negligence claim was not barred by the applicable three-year statute of limitations, MCL 500.5805(10). The application of the discovery rule has been limited to situations involving latent injuries or a plaintiff's inability to discover the causal connection between an injury and a defendant's conduct. Because stray voltage cases involve only patent injuries, the discovery rule does not apply to such cases.

2. The trial court properly denied the defendant's motion for summary disposition of the negligence claim. A claim involving stray voltage accrues when the plaintiff is harmed as a result of stray voltage. There must be evidence of both stray voltage and its resulting harmful effects to the plaintiff. A claim based on stray voltage causing injuries to a dairy herd does not accrue until there are harmful effects to the herd that can be attributed to stray voltage. In this case, there is a genuine issue of material fact with regard to whether the plaintiffs' herd did not begin to experience the harmful effects of stray voltage until a date that was within the three-year period of limitations.

3. The trial court erred in denying the defendant's motion for summary disposition of the nuisance claim. The plaintiffs' nuisance claim is essentially a product-liability claim. Sellers of defective products cannot be liable for nuisance because such liability would expand the scope of nuisance law beyond its origins.

4. The continuing-wrongful-acts doctrine does not apply to cases, like this one, in which the plaintiff is seeking compensation for the continual harmful effects caused by a completed original act.

Affirmed in part, reversed in part, and remanded for further proceedings.

MURRAY, J., concurring in part and dissenting in part, agreed with the majority's treatment of the nuisance claim, as well as with the conclusion that the discovery rule does not apply to this case. However, he would hold that any claim by the plaintiffs for damages that accrued before June 20, 2001, which are outside the three-year period of limitations, are barred as a matter of law. The plaintiffs are limited to seeking recovery of damages for claims that arose after June 29, 2001, three years before the complaint was filed. Judge MURRAY would reverse the trial court with respect to the negligence claim and remand the case for a grant of partial summary disposition to the defendant and a limitation of the damages the plaintiffs may seek to recover.

1. NEGLIGENCE — STRAY VOLTAGE — DISCOVERY RULE.

The common-law discovery rule, which tolls statutory periods of limitations and which has been limited to situations involving latent injuries or a plaintiff's inability to discover the causal connection between an injury and a defendant's conduct, does not apply to negligence claims involving stray voltage; stray voltage cases involve only patent injuries.

2. NEGLIGENCE — STRAY VOLTAGE — DAIRY HERDS — ACCRUAL.

A negligence claim based on stray voltage causing injuries to a dairy herd does not accrue until there are harmful effects to the herd that can be attributed to stray voltage (MCL 600.5827).

*Foster, Swift, Collins & Smith, P.C.* (by *James B. Dozema* and *John W. Inhulsen*), for the plaintiffs.

*Warner Norcross & Judd LLP* (by *Rodrick W. Lewis, John J. Burch,* and *Jason L. Byrne*) for the defendant.

Amicus Curiae:

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Leon J. Letter*), for Michigan Farm Bureau.

Before: FORT HOOD, P.J., and SMOLENSKI and MURRAY, JJ.

SMOLENSKI, J. Plaintiffs, who own and operate a dairy farm in Allegan County, sued defendant for negligence, nuisance, and trespass relating to injuries to their dairy herd and property allegedly caused by stray voltage. Defendant moved for summary disposition of all three claims. The trial court granted defendant's motion with respect to the claim for trespass, but denied the motion with respect to the claims for nuisance and negligence. This Court granted defendant's application for leave to appeal. We affirm in part, reverse in part, and remand.

On appeal, defendant first argues that the trial court erroneously applied the discovery rule to conclude that plaintiffs' negligence claim was not barred by the applicable three-year statute of limitations, MCL 600.5805(10). Defendant argues that the discovery rule should not apply in stray voltage cases. Defendant further argues that, even if the discovery rule does apply, plaintiffs' negligence claim was still untimely because they should have discovered their claim more than three years before their action was filed.

This Court reviews a trial court's summary disposition decision de novo. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition may be granted under MCR 2.116(C)(7) when an action is barred by the statute of limitations. In *Turner v Mercy Hospitals & Health Services of Detroit,* 210 Mich App 345, 348; 533 NW2d 365 (1995), this Court explained:

> A defendant who files a motion for summary disposition under MCR 2.116(C)(7) may (but is not required to) file supportive material such as affidavits, depositions, admis-

sions, or other documentary evidence. MCR 2.116(G)(3);
*Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879
(1994). If such documentation is submitted, the court must
consider it. MCR 2.116(G)(5). If no such documentation is
submitted, the court must review the plaintiff's complaint,
accepting its well-pleaded allegations as true and constru-
ing them in a light most favorable to the plaintiff.

"If the pleadings or other documentary evidence reveal no
genuine issues of material fact, the court must decide as a
matter of law whether the claim is statutorily barred."
*Holmes v Michigan Capital Med Ctr,* 242 Mich App 703,
706; 620 NW2d 319 (2000).

We agree with defendant that the discovery rule is
inapplicable to stray voltage cases as a matter of law.
Our Supreme Court has applied the discovery rule in
cases involving latent injuries or a plaintiff's inability to
discover a causal connection between the injury and the
defendant's breach of duty. *Lemmerman v Fealk,* 449
Mich 56, 65-68; 534 NW2d 695 (1995). The Court has
refused to apply it in cases of ordinary negligence where
the plaintiff merely misjudges the severity of an injury.
*Stephens v Dixon,* 449 Mich 531, 537; 536 NW2d 755
(1995). More recently, the Court refused to apply the
discovery rule to fraud claims, relying in part on the
plain language of MCL 600.5827,[1] which governs when
a claim accrues. *Boyle v Gen Motors Corp,* 468 Mich 226,
231-232; 661 NW2d 557 (2003). Indeed, the Court has
granted leave to consider whether the common-law

---

[1] MCL 600.5827 provides:

   Except as otherwise expressly provided, the period of limita-
tions runs from the time the claim accrues. The claim accrues at
the time provided in sections 5829 to 5838 [MCL 600.5829 to MCL
600.5838], and in cases not covered by these sections the claim
accrues at the time the wrong upon which the claim is based was
done regardless of the time when damage results.

discovery rule remains viable in light of MCL 600.5827. See *Trentadue v Buckler Automatic Lawn Sprinkler Co,* 475 Mich 906 (2006).

Considering that the discovery rule has been limited to situations involving latent injuries or a plaintiff's inability to discover the causal connection between an injury and a defendant's conduct, we find no basis for applying the rule to stray voltage cases.

We agree with decisions from other jurisdictions observing that stray voltage claims involve only patent injuries. In *Dabb v NYNEX Corp,* 262 AD2d 1079; 691 NYS2d 840 (1999), the court held that for purposes of the statute of limitations, "the alleged harmful effect of electricity upon the cows is in fact patent, not latent, and thus there is no interval between the alleged exposure and resulting harm." The court distinguished stray voltage claims from cases involving the harmful effects caused by exposure to toxins in which the adverse effects do not manifest themselves until many years after exposure.

In *Spriestersbach v Ohio Edison Co,* 1995 WL 641146 (Ohio App, 1995), the Ohio Court of Appeals refused to extend the discovery rule to a stray voltage case because that rule had been limited to cases involving malpractice and latent defects. The court rejected the plaintiffs' argument that the damages to their herd were similar to cases involving latent diseases:

> Appellants' arguments are unpersuasive. Apart from the medical malpractice cases, which the Supreme Court has expressly limited to malpractice . . . , application of a discovery rule is predicated upon manifestation of the injury at some point after the wrongful conduct. In the case *sub judice,* the injuries from the cattle's exposure to the stray voltage occurred and manifested themselves in timely proximity to the exposure. Stray voltage shocked the cattle over a period of years, during which time they also pro-

> duced less milk and suffered from frequent and severe physical illnesses. Once, Mrs. Spriestersbach herself experienced a particularly strong shock while in the milking parlor and saw a cow immediately fall to the ground, dead. Appellants admittedly were aware of both the electrical problems and the resulting injuries; they simply may not have put the two together. This situation is not comparable to a latent disease, the symptoms of which may not be experienced for years, or to a latent defect in a product, which is not detectable until well after the sale. The injury manifested itself immediately; therefore, the discovery rule, no matter how formulated, does not apply to this action. [*Id.* at *5 (citation omitted).]

See also *G & K Dairy v Princeton Electric Plant Bd,* 781 F Supp 485, 488 (WD Ky, 1991).

Accordingly, we conclude that the discovery rule is inapplicable to this case as a matter of law. Nonetheless, we disagree with defendant's assertion that, absent the discovery rule, plaintiffs' negligence claim is necessarily barred by the three-year period of limitations.

MCL 600.5827 provides that the period of limitations runs from the time a claim accrues, and that a claim accrues when the wrong upon which it is based occurs regardless of when damages result. For purposes of MCL 600.5827, the term "wrong" refers to the date on which the plaintiff was harmed by the defendant's act, not the date on which the defendant acted negligently because that would permit a cause of action to be barred before any injury resulted. *Chase v Sabin,* 445 Mich 190, 195-196; 516 NW2d 60 (1994). Accordingly, a cause of action for a tortious injury accrues when all the elements of the claim have occurred and can be alleged in a proper complaint. *Stephens, supra* at 539. At that point, the plaintiff must be able to allege, for a negligence claim, (1) the existence of a legal duty owed by the

defendant to the plaintiff, (2) a breach of such duty, (3) a proximate causal relationship between the breach of such duty and an injury to the plaintiff, and (4) damages suffered by the plaintiff. *Id.* The burden of establishing that a claim is barred by the statute of limitations is on the party asserting the defense. *Forest City Enterprises, Inc v Leemon Oil Co,* 228 Mich App 57, 74; 577 NW2d 150 (1998).

A claim involving stray voltage accrues when the plaintiff is harmed as a result of stray voltage. There must be evidence of both stray voltage and its resulting harmful effects to the plaintiff. Therefore, a claim based on stray voltage causing injuries to a dairy herd does not accrue until there are harmful effects to the herd that can be attributed to stray voltage.

Defendant relies on evidence that plaintiffs' herd began experiencing a decrease in milk production in 2000 to argue that plaintiffs' negligence claim accrued at that time and, therefore, was untimely filed more than three years later in 2004. Although a decrease in milk production was identified as an effect of exposure to stray voltage, there was evidence that other factors can also cause milk production to decrease. Moreover, there was evidence that milk production increased again in 2001 and that it was not until 2002 that milk production began a sustained decline and other signs of stray voltage began to appear. More significantly, the submitted evidence showed that defendant's own employees tested plaintiffs' farm in 2002 and 2003 and did not detect a problem with stray voltage. Viewed in a light most favorable to plaintiffs, the evidence created a genuine issue of material fact with regard to whether plaintiffs' herd did not begin to experience the harmful effects of stray voltage until after June 29, 2001, less

than three years before plaintiffs filed their complaint in June 2004.[2]

Furthermore, plaintiffs presented evidence that defendant provided service to a newly constructed wash barn in 2003, which may have been the source of stray voltage. Because any claim of negligence based on this new source of electricity could not have accrued until 2003, summary disposition based on the statute of limitations was not warranted.[3]

Defendant argues that the trial court erred by concluding that statements made by its employees to plaintiffs about the absence of stray voltage on plaintiffs' property negated plaintiffs' knowledge of a possible claim, thus tolling the running of the limitations period.

Defendant's employees performed periodic testing of plaintiffs' farm to check for stray voltage. Plaintiffs claim that defendant checked their farm in October 2002, November 2003, and December 2003, each time advising that there was no problem with stray voltage. However, plaintiffs began noticing a sustained decline

---

[2] We disagree with defendant that plaintiff John Schaendorf's affidavit improperly created an issue of fact by asserting facts contrary to his deposition testimony. *Mitan v Neiman Marcus,* 240 Mich App 679, 682-683; 613 NW2d 415 (2000). In his deposition, Schaendorf admitted that there was a drop in milk production in 2000 that, in hindsight, could have been caused by stray voltage, but he further stated that he was not certain what caused the milk production to drop. In his affidavit, Schaendorf averred that he was not alerted to a possible problem of stray voltage affecting the herd until 2002, when he became aware of other physical problems with the herd in addition to a sustained drop in milk production. Schaendorf's affidavit is not inconsistent with his deposition testimony.

[3] We agree with defendant that plaintiffs cannot rely on a theory of fraudulent concealment to toll the period of limitations because they did not plead this theory, or allege facts in support of it, in their complaint. *Phinney v Perlmutter,* 222 Mich App 513, 562-563; 564 NW2d 532 (1997).

in milk production and other physical symptoms associated with stray voltage during this period, so they hired their own expert to test the farm in December 2003. The expert concluded there was a stray voltage problem.

Relying on *Bellville v Consumers Energy Co,* unpublished opinion per curiam of the Court of Appeals, issued August 24, 2004 (Docket No. 243719), defendant argued that its statements advising plaintiffs that there was no problem with stray voltage should not have been considered by the trial court in evaluating plaintiffs' knowledge of a possible claim for purposes of the discovery rule. Because *Bellville* is an unpublished decision, it was not binding on the trial court under the rule of stare decisis. MCR 7.215(C)(1). In any event, we agree with the trial court that *Bellville* is factually distinguishable. In this case, defendant's statements denying a problem with stray voltage were made after its tests on plaintiffs' property. There is no indication in *Bellville* that defendant conducted actual testing for stray voltage; rather, it appears that it merely denied a problem with stray voltage. Unlike the trial court, however, we do not view the significance of defendant's statements as relating to plaintiffs' knowledge of a possible problem for purposes of applying the discovery rule. Rather, the significance of the statements is that they give rise to a genuine issue of material fact concerning whether there was a possible problem with stray voltage that affected plaintiffs' herd in 2002 and 2003.

For these reasons, we affirm the trial court's denial of defendant's motion for summary disposition of plaintiffs' negligence claim based on the statute of limitations.

Next, defendant argues that summary disposition of plaintiffs' nuisance claim was warranted under MCR 2.116(C)(8) because plaintiffs failed to state a claim for nuisance as a matter of law. We agree.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's complaint by the pleadings alone. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004). All well-pleaded factual allegations in the complaint are taken as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486-487; 546 NW2d 668 (1996). The motion should be granted only if the claims are so clearly unenforceable as a matter of law that no factual development could justify recovery. *Id.* at 487.

The allegations offered by plaintiffs in support of their nuisance claim are merely a restatement of their negligence theory. Plaintiffs have alleged that defendant is liable for the manner in which they supplied electricity to their property. See *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 83; 592 NW2d 112 (1999). This is essentially a product-liability claim. Plaintiffs' negligence claim is likewise based on the delivery of electricity. Sellers or installers of defective equipment generally cannot be liable for nuisance, because this would significantly expand the scope of nuisance law beyond its origins. See *Detroit Bd of Ed v Celotex Corp (On Remand)*, 196 Mich App 694, 710; 493 NW2d 513 (1992). Although defendant has retained control of the electrical system, that does not distinguish this case from *Celotex Corp*, or support the application of a nuisance theory in this case. Plaintiffs' reliance on *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335; 568 NW2d 847

(1997), is misplaced because that case involved a nuisance claim that arose on adjoining property, not a claim for product liability.

Therefore, the trial court erred in denying defendant's motion for summary disposition with respect to plaintiffs' nuisance claim.

We also agree with defendant that the continuing-wrongful-acts doctrine does not apply in this case. The doctrine is inapplicable to cases like this one, in which the plaintiff is seeking compensation for the continual harmful effects caused by a completed original act. *Jackson Co Hog Producers, supra* at 83. Moreover, the continuing-wrongful-acts doctrine is no longer viable with respect to claims arising beyond the period of limitations. *Garg v Macomb Co Community Mental Health Services*, 472 Mich 263, 284-285; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005).

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

FORT HOOD, P.J., concurred.

MURRAY, J. (*concurring in part and dissenting in part*). I concur in the majority's reasoning and result with respect to its treatment of plaintiffs' nuisance claim, as well as with the majority's conclusion that the discovery rule does not apply to this case.[1] However, I

---

[1] The discovery rule does not apply in this case for the additional reason that the Legislature has not provided for the application of such an extension to the three-year period of limitations in MCL 600.5805(10), nor has it otherwise modified when a claim accrues under MCL 600.5827. This conclusion is compelled by our Supreme Court's decision in *Garg v Macomb Co Community Mental Health Services*, 472 Mich 263; 696 NW2d 646 (2005). The key holding in *Garg* was the Court's decision that the common-law "continuing violations" doctrine was inconsistent with the accrual language of MCL 600.5827 and the straightforward three-

part ways with the majority's conclusion that a genuine issue of material fact exists on whether the statute of limitations bars plaintiffs' negligence claim. I conclude that any claim for damages sought by plaintiffs that accrued prior to June 29, 2001, which are outside the three-year statute of limitations, are barred as a matter of law. I would therefore reverse in part the trial court's order and remand for entry of an order granting in part defendant's motion for summary disposition.

Although I agree with the majority's conclusion that the discovery rule does not apply to this case, in my view plaintiffs are limited to seeking recovery of those damages for claims that arose after June 29, 2001, three years before the complaint was filed. *Garg v Macomb Co Community Mental Health Services,* 472 Mich 263; 696 NW2d 646 (2005). MCL 600.5827 provides that a claim accrues when the wrong is done, and "[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted." *Boyle v Gen Motors Corp,* 468 Mich 226, 231 n 5; 661 NW2d 557 (2003), citing *Stephens v Dixon,* 449 Mich 531, 534-535; 536 NW2d 755 (1995).[2] Here, a portion of the damages plaintiffs seek to recover are for losses occurring in 2000 and part of 2001, but

---

year period provided in MCL 600.5805(10). More simply, the Court concluded that, under MCL 600.5805(10), "three years' means three years." *Id.* at 284. See, also, *Magee v Daimler Chrysler Corp,* 472 Mich 108, 113; 693 NW2d 166 (2005); *Boyle v Gen Motors Corp,* 468 Mich 226, 231-232; 661 NW2d 557 (2003). *Garg* and *Magee,* like the instant case, involved the application of a common-law device to essentially extend the time for bringing suit beyond the three-year period in MCL 600.5805(10). Both courts refused to do so, most explicitly the *Garg* Court, for the reason that there was no provision allowing it within the statute. The same holds true with respect to the discovery rule, a fact that seems to have been recognized by the Court. See *Trentadue v Buckler Automatic Lawn Sprinkler Co,* 475 Mich 906 (2006).

[2] There are several exceptions to this accrual rule, but they are not applicable to this case. MCL 600.5829-600.5838.

the evidence presented by plaintiffs shows that the wrong causing those damages had already occurred before June 29, 2001, that plaintiffs were well aware of this harm,[3] and yet did not file suit until more than three years later. Consequently, damages for the harm caused by defendant's conduct before June 29, 2001, should be time-barred. See *Jackson Co Hog Producers v Consumers Power Co,* 234 Mich App 72, 81-82; 592 NW2d 112 (1999) (holding that the installation of electricity was the tortious act, while the stray voltage was the resulting harm).

However, as argued by amicus curiae Michigan Farm Bureau, plaintiffs' entire case is not subject to dismissal because plaintiffs have alleged *new* conduct within the three-year limitations period. In particular, plaintiffs allege that defendant caused stray voltage to enter the farm through the installation of a new line into the "washbarn" in June 2003, and that has caused additional[4] damage to the livestock. Thus, plaintiffs have

---

[3] The undisputed evidence revealed that plaintiffs were well aware that stray voltage could be a problem for livestock farms. Specifically, in the mid-1990s defendant had mailed a stray voltage video to plaintiffs, and plaintiff Connie Schaendorf viewed the tape. In 1995 plaintiffs filled out a stray voltage checklist sent by defendant, and then had defendant come to their farm to do an inspection. Defendant also gave plaintiffs a voltmeter for their own use. Another inspection occurred in 1997. Additionally, plaintiff John Schaendorf testified that he believed that stray voltage problems first occurred in late 2000, as they were experiencing a decrease in production, and an increase in livestock deaths and ketosis. Plaintiffs' expert, Michael Behr, concluded that the stray voltage had begun as early as mid-2000, while another expert, Gerald Bodman, testified that stray voltage began to be a problem at the farm in late 1999 or early 2000.

[4] "Additional" as in additional to and separate from the damages caused by the stray voltage that occurred before June 29, 2001, the damages for which plaintiff improperly sought to recover in a lawsuit filed in 2004. See *Connelly v Paul Ruddy's Equip Repair & Service Co,* 388 Mich 146, 151-152; 200 NW2d 70 (1972).

alleged a separate act that has allegedly caused additional damage to their livestock. That claim is not barred by the statute of limitations. *Garg, supra*; *Jackson Hog Producers, supra* at 81-82; *Grist v Upjohn Co,* 1 Mich App 72, 81; 134 NW2d 358 (1965).[5] Therefore, I would reverse the trial court and remand for entry of an order granting in part defendant's motion and limiting plaintiffs to damages for any stray voltage entering through the "washbarn" that caused damage to the livestock.

---

[5] Defendant conceded at oral argument that this allegation is properly considered in this case. Additionally, whether this newly installed line caused any damages is not an issue before this Court.